28 So.2d 1

## Succession of LAMBERT.

No. 37997.

June 14, 1946.

Dissenting Opinions June 24, Aug. 14, and Sept. 24, 1946.

Rehearing Denied Oct. 9, 1946.

Clarence Dowling and Dorothy Dowling, both of New·Orleans, for appellants.

Henry M. Robinson, Jones, Flanders Waechter & Walker, and Elmer D. Flanders, all of New Orleans, for appellee.

HAMITER, Justice.

Frederick Lambert, who was never married, died in the City of New Orleans on June 25, 1942, leaving a nun-cupative will· by public act of date July 18, 1927. His estate, consisting principally of cash and real estate, was inventoried and valued at $186,765.11.

In the testament the testator made numerous specific bequests to relatives (principally nephews and nieces, but also his brother William Lambert to·whom he bequeathed $10,000) and to friends; and he appointed his other brothers Robert Lambert and Albert Lambert executors without bond. The instrument further pro-·vided: "After all my debts and obligations are paid I leave the residue of my estate to my brothers Robert·Vincent Lambert and Albert Lambert share and share alike." Albert Lambert predeceased the testator.

After the will was probated, the executor confirmed, and the specific cash legacies and debts paid, Robert V. Lambert, the surviving residuary legatee, was sent and put into possession, by an ex parte judgment, of the residue of the estate, it having a value of $142,293.71.

Subsequently, William L. Lambert and Albert E. Lambert, brother and nephew respectively of the testator, instituted this suit· attacking the judgment that placed Robert Vincent Lambert in possession of the residuum. In the petition they alleged:

"That by the terms of the nuncupative will by public act * * * the decedent Fred Lambert disposed of the residue of his property, in the proportion of one-half ·to each of his two brothers, namely, Robert Vincent Lambert and Albert Lambert.

"That Albert Lambert having died before the death of the testator, that that portion of the testator's estate bequeathed to Albert Lambert, was therefore not disposed of by last will and testament, and should devolve upon the legal heirs in accordance with the provisions of Article 1709 of the Revised Civil Code.

"Petitioners further aver that they together with Robert V. Lambert, and the children of Christopher Lambert, are the sole and only heirs at law of said decedent, and, as such, they are entitled to inherit all of the property of the decedent which had not been disposed of by last will and testament."

To this petition the defendant, Robert V. Lambert, tendered exceptions of no cause and no right of action. The district court, accepting the allegations of the petition as being true and correct (a copy of the will was not attached), overruled the exceptions.

At the commencement of the trial on the merits (after the filing of an answer and the introduction in evidence of the will) defendant reurged his exceptions and objected to plaintiffs' making proof of the petition's allegations, he contending that the disposition in question was a conjoint legacy and, hence, he had acquired Albert Lambert's portion of the residue by accretion.

The judge ruled "that the exception of no legal right or cause of action be maintained, that further evidence in this suit be held inadmissible, and that the plaintiffs' petition be dismissed." In making this ruling, as his written reasons for judgment disclose, the judge gave expression to a feeling of duty to follow the last decision of this court on the subject, notwithstanding he entertained the individual opinion that the intention of the testator, under the provisions of the will, was to leave the residue in the proportion of one-half to Robert V. Lambert and one-half to Albert Lambert (a distributive, not a conjoint, legacy).

Plaintiffs are prosecuting this appeal.

As is above indicated, this controversy presents for our determination the question of what the testator intended when he stated: "After all my debts and obligations are paid I leave the residue of my estate to my brothers Robert Vincent Lambert and Albert Lambert share and share alike." In other words, did the testator intend, by that statement, to bequeath the residue to those two brothers conjointly so that should the share of one lapse, either because of death (as did occur here) or otherwise, all of it would accrue or accrete to the survivor? Or did he intend to invest each with a definite part without anticipating a lapsing of either share?

Revised Civil Code, Article 1712, provides: "In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the

proper signification of the terms of the testament."

To ascertain the intention of the testator here with reference to the controverted clause we are compelled to consider only that clause and to interpret it in the light of those articles of the Revised Civil Code which provide for accretion relative to testamentary dispositions; no other portion of the will furnishes any assistance in determining such intention. The referred to codal provisions are:

Art. 1706 (A similar provision in Code of 1808 as Article 194 and in Code of 1825 as Article 1699, but none in Code Napoleon). "The right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles."

Art. 1707 (Similar provisions in Codes of 1808 and 1825 and in Code Napoleon, being numbered Articles 195, 1700, and 1044, respectively). "Accretion shall take place for the benefit of the legatees, in case of the legacy being made to the several conjointly.

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [each] colegatee in the thing bequeathed." (Brackets ours).

Art. 1708. "It shall also be reputed to be made conjointly when a thing, not susceptible of being divided without deterioration, has been given by the same act to several persons, even separately." (This article is inapplicable to the instant case.)

Art. 1709 (Similar provision in Code of 1808 as Article 197 and in Code of 1825 as Article 1702, but none in Code Napoleon). "Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs."

These codal provisions have been considered by this court in numerous cases, and also by two of the federal appellate tribunals. The earliest of these was Parkinson v. McDonough, 1826, 4 Mart., N.S., 246, an often cited decision and one that has influenced greatly our subsequent jurisprudence. The will in contest therein declared that, "I will and bequeath to the orphan children of my old friend Godfrey Duher, *and which are now under my charge,* and are named Mary, Nancy, James, and Eliza, one share, or one-eighth part of all my property, *to be equally divided among them.*" The plaintiffs (appellants) contended that the doctrine of accretion was applicable to that clause, one of the orphan legatees having died. Prefacing its remarks concerning the disposition the court observed:

"In cases of doubtful or equivocal expressions in testaments, when disputes arise on matters to which they relate, it is a primary duty of the courts of justice to ascertain with all possible precision the intention of the testator, *and if it be consistent with law,* to give it effect. * * *" (Italics ours.)

The court then quoted the clause, and concluded, in view of the expressions of fatherly affection therein contained, that the testator intended that the four orphans "alone should take the property bequeathed by it, in exclusion of all others, for their mutual benefit, or, in legal terms, conjointly." Continuing, the opinion stated: *"Believing this to have been the intention of the testator, it remains to inquire whether it be expressed in such a manner as to authorize the court, in pursuance of law, to give it effect."* (Italics ours.)

Then, after making reference to the law respecting conjoint legacies (Article 195 of the Code of 1808 which was identical with Revised Civil Code, Article 1707), and after observing that under it the construction most readily to be given to the clause would perhaps be that one-fourth of the one-eighth of the testator's estate was vested in each of the legatees separately, the court gave consideration to the contention of appellants that the phrase "to be equally divided" related only to the manner of executing or carrying into effect the disposition, and was not an assignment of parts or a division of the gift itself. And,

with reference to this contention, the court said: "If the interpretation contended for by the appellants *be tolerated by law, it will afford the means of giving effect to the intention of the testator in the present case."* (Italics ours.)

Thereafter, in aid of the conclusion already reached that the testator intended to make a conjoint legacy, it adopted the distinction suggested by appellants between a division of the gift itself and a division, operative in the future, of the execution of the disposition; and in doing this it reasoned:

"The distinction between a bequest of a thing to many in equal portions; and one wherein a testator gives a legacy to two or more individuals, to be divided in equal portions, appears at first view extremely subtle and refined. The difference of phraseology in those two modes of bequeathing is so slight as not readily to convey to the mind any difference in ideas, and can only produce this effect by separating the members of the sentence in the latter phrase; in truth to create two distinct sentences, each complete in itself with regard to sense and meaning; the one relating to the disposition of the will, the other to its execution. We might hesitate much in adopting this method of construction, were it not sanctioned by the authorities cited in behalf of the appellants; the doctrine contended for is fully supported by the Commentary of Toullier on the 1044th article of Code Napoleon,

which we have already shown to be precisely similar to that of our own code on the same subject."

This reasoning clearly discloses that had the bequest been in favor of the four orphans "in equal portions" the court would have held it to be a distributive, not a conjoint, legacy. Since, however, the bequest was "to be equally divided," there was afforded the opportunity for giving effect to the intention of the testator, this by means of making a distinction between the two phrases just as Toullier and several of the other French commentators had done.

It was the view of these commentators that if the testator said, "I leave my estate to Peter, Paul, and James in equal portions," there is an assignation of parts which precludes accretion. But if he says "I leave my estate to Peter, Paul, and James, to be divided between them in equal portions," there is no assignment of parts and accretion results. This view was expressed by Toullier, in Droit Civil Francais, vol. 5, p. 690, as follows:

"If the testator unites the legatees in the same phrase, it is to be presumed that he does it but for abbreviation, propter sermonis compendium, and not to give them the right to take the portions which become caducous.

"Nevertheless, it must be distinguished if the assignation of parts is found in the disposition itself, or solely in its execution. In the example thus proposed, 'I give to Peter, Paul, and John the Cornelian estate in equal portions', the distinction and assignation of parts are in the disposition itself; they make a part, they are inseparable in each; thus, in principle, each one has the right only to that portion which is especially assigned to him.

"On the contrary, if it is said 'I give to Peter, Paul, and John the Cornelian estate, for to be divided between them in equal portions', they remain conjoints re et verbis in the first member of the phrase, which contains the disposition and which includes, in principle, the destination of the totality in favor of each of the legatees. They have no parts assigned to them save in the second member, which is an accessory phrase united to the first by conjunction (pour) 'for', and it is tied on to determine the manner of executing the disposition, without otherwise destroying the rights given in the first member to the legatees through which they have, nevertheless, the right of accretion of the parts which become caducous."

Obviously, the court in the Parkinson case, in carrying out the intention of the testator, reluctantly adopted the French commentator's subtle distinction solely for the purpose of avoiding the consequences of the general rule which prohibited accretion (Art. 194, C.C. of 1808; Art. 1706, R.C.C.) and to bring the clause of the will within the exception that declared a legacy made to several to be conjoint when it contained no assignment of parts (Art. 195, C.C. 1808; Art. 1707, R.C.C.).

The next relevant case in our jurisprudence is Lebeau v. Trudeau, 1855, 10 La. Ann. 164, the will in which stated: "After all my debts paid, my property *shall be divided, in equal portions*, among the persons hereinafter named (names legatees). I have hereinbefore mentioned the names of the persons to whom I bequeath all my property." (Italics ours.)

After concluding from all of the language of the will that the testator intended to constitute the persons named as conjoint universal legatees and to leave his property to them to the exclusion of all others, the court commented:

"To say that by the failure of the legacy as to any one of these eight beneficiaries thus jointly constituted his universal legatees, any other person than they should profit, is to fly in the face of the testator's clear and unequivocal intention; and surely such a result should not be permitted, unless there be some insuperable provision of law to override that intention. * * *"

Then, to carry out the intention of the testator and to render applicable the exception to the general rule regarding accretion, the court, by a three to two decision, recognized and gave effect to the distinction discussed in the Parkinson case, holding that the words of the testator requiring that the property "shall be divided in equal portions" related merely to the regulation of the distribution of the estate, not to the disposition itself. Thus

remarked the court: "He appears to me, on the contrary, to have called them conjointly to partake equally in the totality of his estate, and has mentioned the equality of their portions for the purpose of regulating the distribution of that totality. They are conjointly his universal legatees."

In Mackie v. Story, 1877, 93 U.S. 589, 23 L.Ed. 986, a Louisiana case, there was presented for interpretation a testamentary disposition reading: "I will and bequeath to Henry C. Story and Benjamin S. Story all properties I die possessed of, *to be divided equally between them.*" (Italics ours.)

Following and quoting from the decisions in Parkinson v. McDonough and Lebeau v. Trudeau (both supra), and recognizing the distinction made in those cases, the U. S. Supreme Court held that the clause contained a conjoint legacy.

The disputed bequest in the will in Succession of Dupuy, 1881, 33 La.Ann. 277, was held to be conjoint, the court citing the Parkinson and Lebeau decisions as authority for the holding. No mention was made, however, of the above discussed distinction. Moreover, the contest was not between legal heirs of the testator and the legatees under the will; it was a proceeding brought by the executors of the succession to compel an adjudicatee at a judicial sale to comply with the terms of the adjudication.

The Federal Circuit Court of Appeals, Fifth Circuit, had before it in 1911 a Louisiana case entitled Waterman v. Canal-Louisiana Bank & Trust Co., 186 F. 71, 72, involving a clause in a will reading: "I will and direct that such residue *shall be divided* between the beneficiaries of the charitable bequests heretofore made to various institutions." In interpreting this clause, which it is noticed reads with a future effect, the court first determined from the will as a whole that the testator had in mind the making of a conjoint legacy. Then, with the Parkinson and Trudeau cases as a guide, which were therein cited, quoted from and followed, it set out to and did uphold that intention of the testator, recognizing and employing in doing so the distinction drawn therein.

Succession of Villa, 1913, 132 La. 714, 61 So. 765, concerned a bequest in which the division was made operative in the future on the execution or enjoyment of the disposition, not on the gift itself. Applying the distinction of the earlier cases, the court held that accretion had resulted.

Decided by a division (three judges) of this court in 1924 was Succession of Schonekas, 155 La. 401, 99 So. 345, 346, which involved a will that contained the controverted clause reading:

" 'In the event of my death, I give and bequeath unto my daughter Delia Schonekas, wife of Charles B. Kern, and Lillie Schonekas, divorced wife of Herman Roos, share and share alike, the disposable portion of my estate; * * *' "

It was held that the clause did not provide a conjoint legacy, the court concluding that the expression "share and share alike" was principal and dispositive or a division of the gift itself, not accessorial and regulational or a regulation of the enjoyment of the gift. In reaching this conclusion and holding there were considered, as the opinion discloses, many of the authorities above discussed, especially those in which was adopted the distinction between a division by the testator of the gift itself and that which operates merely in the future on the execution or enjoyment of the bequest.

But the Schonekas case was impliedly overruled in 1928 by the decision in Succession of Wilcox, 165 La. 803, 116 So. 192, 193. In the letter there was considered a clause of a will reading:

" 'The remainder of my estate, after the payment of the special legacies hereinabove provided for, I will and bequeath unto my nieces, Blanche Edge, born Williams, wife of J. M. Edge, Margaret Burnet, born Williams, wife of Joe H. Burnet, Mary Jane Russell, born Williams, wife of Wright Russell, and to my nephews, Thomas G. Williams and Willis W. Williams, share and share alike.' "

In holding this to be a conjoint legacy the court said in part:

"It is argued on behalf of the appellees that the universal or residuary legacy was

not a conjoint legacy, but a legacy of one-fifth of the residue of the estate to each of the five legatees named, because of the expression in the will, 'share and share alike.' It is said that the meaning and effect of the expression 'share and share alike' is the same as if the testatrix had given, in terms, to each one of the five legatees named, separately, one-fifth of the residue of her estate. Our opinion, to the contrary, is that the expression 'share and share alike' had no particular reference to the number of the residuary legatees, or to the fractional part which each should receive of the residue of the estate, *but meant merely that the residue of the estate should be divided equally among the residuary legatees,* without regard for the number of them." (Italics ours.)

By this language it would seem that recognition was being impliedly given to the distinction drawn by the French commentators and incorporated in our earlier jurisprudence, and that the words " 'share and share alike' " were being interpreted as affecting merely a division of the execution or enjoyment of the gift, although the will contained no words providing for a division operative in the future and justifying an interpretation of that kind. Later in the opinion, however, in reference to the Parkinson case, it was said that, "Surely, there is no difference in the meaning between 'to be equally divided among them' and 'share and share alike' ". This indicates a refusal by the court in the Wilcox case to recognize the subtle distinction to which

recognition was given in the former decisions.

The testamentary disposition that formed the basis of the dispute in Succession of Maus, 177 La. 822, 149 So. 466, read:

" 'After all debts are paid, I will and bequeath the balance of my estate, if any, to my Dear Mother, and my Dear Sisters, Mrs. Gus F. Heausler, Mrs. L. J. Franz, and Mrs. George McIntyre, share and share alike.' "

The court held that the lapsed legacy there reverted by accretion to the surviving residuary legatees, the author of the opinion commenting:

"It is immaterial in our opinion, that the residuum may be divisible between the universal legatees. The words 'share and share alike' and 'to be equally divided between them,' when added to a legacy, are terms of similar import, and only express what the law would imply without them. They do not alter the character of the legacy. Succession of Wilcox, 165 La. 803, 116 So. 192; Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986."

The language of the last two sentences of the quoted paragraph is taken almost verbatim from Mackie v. Story (U. S. Supreme Court, discussed supra). But when it is read in connection with the context wherein it appears it has a meaning vastly different from that which its use conveys in the Maus case. In the Mackie case the court's statement that the words "to be equally divided between them" only expresses what

the law would imply without them, had reference to the common law on the subject which then was being distinguished from the civil law. Thus, it was said:

"* * * The civil law does not recognize the common law distinction between joint tenancy and tenancy in common. A gift to two persons jointly [at common law], if it takes effect, inures to their equal benefit without any right of survivorship. If one dies, his share goes to his legal representatives. Hence [at common law], the words 'to be divided equally between them' added to such a legacy only expresses what the law would imply without them. They do not alter the character of the legacy; they are only descriptive of it. At the common law, they would have the effect of making it a tenancy in common; but they have no such effect in the civil law. The legacy, if it takes effect in respect to both legatees, will be divisible equally between them in any event.

"But in testamentary dispositions, the civil law does make a distinction between a conjoint legacy and a legacy of separate and distinct shares in the thing bequeathed. Where the whole thing bequeathed is given to two persons, if one of them fails to receive the benefit of the disposition, either because he dies before the testator, or is incapable to take it, or refuses to take it, or because as to him it is revoked, the whole goes to the other legatee by accretion; for the whole was given to both, and it is presumed to be the will of the testator

that he shall not die intestate as to any part, but that the whole shall pass by his will; and this, notwithstanding it may be divisible between the two legatees, if received by both. But where an aliquot part is bequeathed to one, and another aliquot part to another, then they are separate legacies, and that part which is bequeathed to one is not bequeathed to the other; as, if the testator should say, 'I give one-half of my bank stock to each of my two sons,' or, 'I give my bank stock to my two sons, one-half to each.' Here there is an assignment of parts by the testator himself; and the legacies are separate, and not conjoint." (Brackets ours.)

The court then in the Mackie case proceeded to give effect to the distinction recognized by the French commentators, and also by this court in the Parkinson and Trudeau cases, and it held that the phrase in the will "to be equally divided" constituted merely a regulation as to the disposition of the estate.

What this court did in the Maus case, therefore, was to inject into Louisiana testamentary law some common law principles that are contrary to those enunciated by our Civil Code.

In Succession of Blossom, 194 La. 635, 194 So. 572, 573, the court, without comment, held that the will under consideration contained a conjoint legacy, citing as authority for the holding the Wilcox and Maus decisions. The testament read, with a future operative effect, as follows:

" 'I give and bequeath to Annie Baker, my adopted daughter, now at Elwyn, Pa., the usufruct of my property—and at her death I wish this property *to be equally divided between* Evelyn B. Kern of Toledo, Ohio—and George D. Marshall of Shreveport, Louisiana. \* \* \*' " (Italics ours.)

The latest case in our jurisprudence on the subject of testamentary accretion is Succession of Lacoume, 1944, 205 La. 511, 17 So.2d 726, 727, the clause in contest therein reciting:

" 'One-third of my estate after paying the bequest to my sister to the children of my deceased son, Charles Lacoume, Jr., to-wit: Louis Lacoume and Hortense Lacoume, wife of Henry Arnold.' "

Louis Lacoume predeceased the testator, leaving three children. Mrs. Hortense Lacoume Arnold contended that the clause contained a conjoint legacy, and that, in as much as there was no assignment of parts as between the colegatees, she acquired by accretion the portion bequeathed to Louis Lacoume. Having concluded from the language of the entire will that the testator intended to divide her estate by roots, the court refused to apply the doctrine of accretion.

It is unnecessary for us to view the instant case, to the consideration of which we return, in the light of the subtle distinction, adopted by some of the French commentators and given effect by this court on numerous occasions, between a division of the gift itself and that pertaining to the execu-

tion or enjoyment of it in the future. Neither are we required to determine now whether or not such a distinction be sound and should be continued in our jurisprudence. The division here (if it be a division) clearly affects the gift itself; there are no words in the will suggestive of any future operation or division. The testator, to repeat the clause in question, stated: "After all my debts and obligations are paid I leave the residue of my estate to my brothers Robert Vincent Lambert and Albert Lambert share and share alike."

As before shown, it is the general rule in Louisiana that the right of accretion relative to testamentary dispositions no longer subsists. R.C.C. Art. 1706. To this general rule only two exceptions are authorized, these being (1) when the bequest is made by one and the same disposition to several conjointly without the testator's having assigned the part of each colegatee in the thing bequeathed (R.C.C. Art. 1707), and (2) when a thing, not susceptible of being divided without deterioration, has been given by the same act to several persons, even separately (R.C.C. Art. 1708). Since all parties concede that the second exception is inapplicable here, there remains for us to determine only whether or not the clause in question comes clearly within the first exception to the general rule. If it does, the lapsed portion of the estate (that bequeathed to Albert Lambert) belongs by reason of accretion to Robert V. Lambert. If it does not, such portion devolves *upon*

the legal heirs of the testator. R.C.C. Art. 1709.

Unquestionably, had the words "share and share alike" been omitted from the clause a perfect conjoint legacy would have resulted. With that omission there would have existed a bequest made to the brothers conjointly by one and the same disposition without the testator's having assigned the part of each colegatee. The fact is though that these words were included; they followed immediately the disposing language and joined with it to form a complete thought and sentence. Now what was the significance of those words? Were they employed in a meaningless manner and, hence, constituted surplusage? Or were they used advisedly and deliberately in modification and qualification of the disposition made to both brothers.

It is a cardinal rule of testamentary construction that each and every part of the will shall be given effect; no word, phrase or clause shall be declared surplusage if it can be afforded a reasonable and legal interpretation. On this subject we said in Succession of Price, 202 La. 842, 13 So.2d 240, 244, that:

"To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Guey-dan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15."

In the popular and ordinary sense, the phrase "share and share alike" means in equal shares or proportions. Such is the definition given it in Webster's New International Dictionary, Second Edition, as well as in both Black's and Bouvier's Law Dictionaries. If then the expression signifies an equal division the using of it in a conversation or in a writing is to apportion one-half to each where two persons are concerned, one-third to each if there are three, one-fourth to each if there are four, and so on. Thus, if a mother says to her three children, "I give to all of you this pie share and share alike", certainly each child is entitled to receive a definite one-third of it.

By giving effect, therefore, to all of the words of the will in question as must be done, especially those in the controversial clause, and by interpreting them reasonably using their popular and ordinary meaning, the conclusion is inescapable that the testator when employing the phrase "share and share alike" deliberately and definitely divided the residue of the estate between his brothers, Albert and Robert Lambert, leaving it to them in the proportion of one-half to each; he, in other words, assigned the part of each colegatee

in the thing bequeathed. It follows logically that the legacy is not governed by the above discussed exception (R.C.C. Art. 1707) to the general rule respecting testamentary accretion (R.C.C. Art. 1706), and that the lapsed portion bequeathed to Albert Lambert devolves upon the legitimate heirs of the testator (R.C.C. Art. 1709).

To reach a contrary conclusion, that is that the testator did not assign the part of each colegatee, is to disregard or to delete from the will the "share and share alike" phrase in contravention of the above mentioned cardinal rule of testamentary interpretation. Such was the effect of the decisions in Succession of Wilcox and Succession of Maus, discussed supra; and they, being at variance with our holding herein, are now overruled.

It is argued in the brief of defense counsel that:

"There can be no doubt but that since the decisions in the Wilcox and Maus cases, there have been numerous titles determined by adherence to those authorities. For this Court now to upset that jurisprudence would render those titles insecure and would result in a flood of litigation. * * "

The answer to that argument is that all persons who have taken title to succession property relying on the overruled decisions will be unaffected by the change. They have vested rights which can not be disturbed. They are protected under the law in effect at the time of the vesting of their interests. It was appropriately said in Norton v. Crescent City Ice Manufacturing Company, Inc., 178 La. 135, 150 So. 855, 858, that, "As a general rule, the law as construed in the last decision operates both prospectively and retrospectively, *except that it will not be permitted to disturb vested rights.*" And this court has recognized the principle that a statute which ordinarily operates retrospectively will not be given that effect so as to impair the obligations of contracts or disturb vested rights. Shreveport Long Leaf Lumber Company, Inc., v. Wilson et al., 195 La. 814, 197 So. 566. The same principle, by analogy, is applicable to changes brought about through judicial decrees. (Italics ours.)

Those who may receive under a future will—prospective legatees—have no vested rights in the estate concerned. The interests of beneficiaries under a will do not vest until after the death of the testator.

For the reasons assigned the judgment appealed from is reversed and set aside, the exceptions of no right and no cause of action are overruled, and the case is remanded to the district court for further proceedings according to law and consistent with the views herein expressed. Costs of this appeal shall be paid by defendant; all other costs shall await the final determination of the litigation.

ROGERS, Justice (dissenting).

If this were a case of first impression, I would be inclined to concur in the views

expressed in the majority opinion. I find it difficult in considering the doctrine of accretion or survivorship in connection with the interpretation of wills to distinguish between a bequest of a thing to many legatees in equal portions and a bequest to two or more legatees to be divided in equal portions or share and share alike. In any case it would appear that the portion of each colegatee is assigned in the thing bequeathed and that the portion of the legacy so assigned is vested in each legatee separately, and that they can not acquire from each other by accretion or survivorship. Be that as it may, this Court, in a number of decisions, has held that a legacy of the character under review in this case is a conjoint and not a distributive legacy. These decisions are based on the distinction which the Court found to exist between a legacy in which the assignment of parts is made in disposing form and a legacy in which the assignment of parts is made in executory form. This, in my opinion, is a very refined distinction since in both cases the testator has designated the part each colegatee should receive.

The first case in which this Court was called upon to consider the question was the case of Parkinson v. McDonough, 4 Mart., N.S., 246, decided in 1826, and the last case in which the question was presented was the case of the Succession of Blossom, 194 La. 635, 194 So. 572, decided in 1940. In both cases the testamentary dispositions under review were held to be conjoint legacies. The cases holding to the same effect, decided by this Court in the period elapsing between respective dates of the decisions in the Parkinson case and the Succession of Blossom, are Lebeau v. Trudeau, 10 La.Ann. 164, decided in 1855, by a divided Court with a strong opinion handed down by one of the dissenting Justices; the Succession of Dupuy, 33 La.Ann. 277, decided in 1881; the Succession of Wilcox, by a divided Court, 165 La. 803, 116 So. 192, decided in 1928; Succession of Maus, by a divided Court, 177 La. 822, 149 So. 466, decided in 1933.

In the Succession of Villa, 132 La. 714, 61 So. 765, decided in 1913, the Court, in line with the distinction recognized in the earlier cases, expressed the view that where the words of division apply to the gift itself the legacy is not conjoint, but where the words of the division apply only to the execution of the gift the legacy is conjoint.

There are also two cases in the Federal jurisprudence in which the question was presented. In Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, in a Louisiana case arising in 1876, the Supreme Court of the United States, following the jurisprudence of Louisiana, held that a bequeath to two legatees of all the testator's property, to be divided equally between them, was a conjoint legacy. And in Waterman v. Canal-Louisiana Bank & Trust Co., 186 F. 71, decided by the United States Circuit Court

of Appeals, Fifth Circuit, in March, 1911, the Court held to be a conjoint legacy a bequest by which the executrix divided the residue of her estate between various charitable institutions in proportion to the amount of the special legacies made to those institutions respectively.

The only break in the long line of jurisprudence established by the cases to which I have referred occurred when the decision was rendered in the Succession of Schonekas, 155 La. 401, 99 So. 345, 346, decided in 1924, by one of the divisions of this Court, composed of three judges, at the time the Court was divided into sections.

In the Succession of Schonekas, this Court held that the expression "share and share alike" was an assignment of parts to the colegatees of the thing bequeathed and, therefore, the legacy was not a conjoint legacy. The decision in the case, interpreting the words "share and share alike" appearing in wills, remained the law for a period of four years, or until the decision of this Court in the Succession of Wilcox by which it was impliedly overruled.

I subscribed to the majority opinion in the Succession of Wilcox, but voted for a rehearing and dissented from the refusal to grant the rehearing. See Succession of Wilcox, 165 La. 803, 822, 116 So. 192. I was influenced to do this for two reasons. First, because I was not convinced of the correctness of our original opinion, and secondly, because in my view since the will of Mrs. Wilcox had been executed

while the decision in the Succession of Schonekas represented the last word in the interpretation of the words "share and share alike" in wills, the decision in that case, whether correct or incorrect, should be adhered to so as to preserve the intention of the testatrix when she made her will and not to change the interpretation so as to defeat that intention when the will became executory on the death of the testatrix.

It is for the secondly assigned reason that I am compelled to dissent from the majority opinion in this case. It is true that the will of Frederick Lambert was executed on July 18, 1927, only a few months before the decision was rendered in the Succession of Wilcox on February 13, 1928, but I am not on that account in favor of reviving the decision in the Succession of Schonekas so as to bring the interpretation of the will in this case within the rule announced in that case, thereby overruling the decisions in the Succession of Wilcox, Succession of Maus and Succession of Blossom, which reinstated the rule of law as it existed in this State prior to the decision in the Succession of Schonekas and which have maintained the rule as thus reinstated for a period of eighteen years. I think it is perfectly safe to assume that during that period a number of persons have acted on those decisions as the settled law of this State and their inherent correctness or incorrectness in the abstract is of less importance than that the rule of prop-

erty which they have established shall be constant and invariable. They reflect the rule of law existing at the time of the death of the testator and should be applied in the interpretation of his will.

O'NIELL, Chief Justice (dissenting).

Frederick Lambert, a bachelor, died in New Orleans on June 25, 1942, leaving as his heirs at law three brothers, Robert Vincent Lambert, Albert Lambert and William L. Lambert, and leaving an estate inventoried at $186,765.11, composed principally of real estate and cash. He left a will dated July 18, 1927, in which he bequeathed 21 cash legacies to his relations and some friends, $1,000 to his church, and the burial lot to Robert Vincent Lambert and Albert Lambert. Among the cash legacies was one for $10,000 to the other brother, William L. Lambert. The residue of the estate was bequeathed to Robert Vincent Lambert and Albert Lambert—thus:

"After all my debts and obligations are paid, I leave the residue of my estate to my brothers Robert Vincent Lambert and Albert Lambert share and share alike."

The two residuary legatees were appointed executors without bond and with seizin from the moment of the testator's death.

Albert Lambert died on December 21, 1938, that is, three and a half years before the testator died.

The will was probated at the instance of the surviving legatee, Robert Vincent Lambert. After paying the debts of the succession and the special legacies, he was placed in possession of the residue of the estate by an ex parte judgment of the court, without opposition.

More than two years afterwards, William L. Lambert, and a nephew named Albert E. Lambert, son of the deceased Albert Lambert, filed suit, as the heirs of the testator, to recover from Robert Vincent Lambert one-half of the residue of the estate.

The plaintiffs contended that the residuary legacy to Robert Vincent Lambert and Albert Lambert was not a conjoint legacy, because of the phrase "share and share alike," and hence that they, the plaintiffs, as the heirs of the deceased testator, inherited the one-half share which would have gone to Albert Lambert if he had survived the testator. Soon after the suit was filed, one of the plaintiffs, William L. Lambert, died, and his universal legatee, Mrs. Rose Segari Lambert, was made a party plaintiff in his stead.

The judge of the civil district court dismissed the suit on an exception of no cause or right of action, and the plaintiffs appealed. The majority opinion and decree of this court now sustain the plaintiffs' contention that the residuary legacy to Robert Vincent Lambert and Albert Lambert was not a conjoint legacy.

The question presented is a simple one. It is a question of statutory construction, and was settled by at least seven decisions by this court, one by the Supreme Court of the United States in a Louisiana case, and one by the United States Circuit Court of Appeals for the Fifth Circuit in another Louisiana case. In all of the jurisprudence there is not a decision that lends any support whatever to the decision which is being rendered in this case.

It is not claimed in the prevailing opinion in this case that the author has discovered something new—something like an oversight or inadvertence—or any special error—on the part of any one of his predecessors. Nor is it claimed that time has wrought a change in the meaning of the trite phrase which is being construed—"share and share alike." On the contrary, the only reason given in the prevailing opinion in this case, for overruling the jurisprudence on the subject, is that the opinion of the judges who subscribe to this prevailing opinion does not accord with the opinion of their predecessors as to the meaning of the phrase "share and share alike."

This statute, which has been construed one way for 120 years and is being construed the other way now, is the second paragraph of article 1707 of the Civil Code. The article reads as follows:

"Accretion shall take place for the benefit of the legatees, in case of the legacy being made to the several conjointly.

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [meaning each] colegatee in the thing bequeathed."

The only question to be decided therefore, in this case or in any given case where the testator bequeaths a legacy to several legatees by one and the same testamentary disposition, and adds such an expression as "share and share alike," or "to be equally divided among them," is whether such an expression means that the fractional part that is bequeathed to each colegatee shall be *calculated according to the unmber of them named in the bequest,* or means that the fractional part shall be calculated *according to the number of them who are living at the time of the death of the testator.*

All testamentary dispositions, of course, deal with the future. In that respect they are not like donations inter vivos, which, essentially, take effect immediately. When a testator declares that *at his death* he gives and bequeaths the residue of his estate to two or more legatees, named in one and the same testamentary disposition, if he desires that what would be otherwise a conjoint legacy shall be a distributive legacy he must assign to each colegatee the fractional part which he bequeaths to him or her; and such an assignment of the fractional parts must be made in plain terms, dealing with the date of the will, in order to make the legacy a distributive leg-

acy, as distinguished from a conjoint legacy. It was so declared in all of the decided cases, especially in Lebeau v. Trudeau, 10 La.Ann. 164, and in Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986. Such an expression as "share and share alike" is not an assignment of parts in the meaning of the second paragraph of article 1707 of the Civil Code. The reason for that, of course, is that without the expression "share and share alike" a bequest made to two or more legatees by one and the same testamentary disposition is a conjoint legacy, as declared in the second paragraph of article 1707 of the Civil Code. That fact is admitted on the 17th page of the prevailing opinion in this case [28 So.2d 8]—in these words:

"Unquestionably, had the words 'share and share alike' been omitted from the clause a perfect conjoint legacy would have resulted. With that omission there would have existed a bequest made to the brothers conjointly by one and the same disposition without the testator's having assigned the part of each colegatee."

The author of the prevailing opinion then says that it "is a cardinal rule of testamentary construction that each and every part of the will shall be given effect." Hence he gives the words "share and share alike" the effect of converting the conjoint legacy into a distributive legacy. He concedes of course that that is contrary to the settled jurisprudence; but he maintains that the settled jurisprudence must yield to his idea of giving effect to the words "share and share alike." The mistake which he makes is in giving the words "share and share alike" the wrong meaning and effect. It might as well be argued that the words "give" and "bequeath" must each be given effect, instead of being considered redundancy, as they really are. The words "share and share alike" mean that the sharing is to be done at the time when the will takes effect, that is, at the time of the death of the testator. In such a case the legatees who survive the testator are the ones who "share and share alike" the legacy bequeathed to them. If only one of them should survive the testator he takes the whole legacy; because there is no difference in that respect between a case where a legacy is bequeathed to two colegatees, and a case where the legacy is bequeathed to three or more colegatees. That also is conceded in the prevailing opinion in this case. If it were not so conceded there would be no occasion in this case to overrule the decision in the Succession of Wilcox, 165 La. 803, 116 So. 192—where there were five colegatees and only four survived— or to overrule the decision in the Succession of Maus, 177 La. 822, 149 So. 466, where there were four colegatees and only three survived. Nor would there be any occasion here for overruling any other of the decisions concerning testamentary dispositions in favor of three or more colegatees, if the court should make a distinction between a legacy in favor of only two colegatees and a legacy in favor of three or more colegatees.

The error which is being made in this case—of overruling the settled jurisprudence on an important question of statutory construction—is caused by failure of the author of the prevailing opinion in this case to observe the distinction between donations mortis causa and donations inter vivos. He fails to observe that a donation mortis causa, unlike a donation inter vivos, deals· with the future. His failure in that respect is obvious—being manifested particularly by an illustration which he gives on the 19th page of his opinion [28 So.2d 8], and which illustration he fails to observe is an example of a donation inter vivos —perhaps a manual gift. He says:

"If then the expression [share and share alike] signifies an equal division the using of it in a conversation or in a writing is to apportion one-half to each where two persons are concerned, one-third to each if there are three, one-fourth to each if there are four, and so on. Thus, if a mother says to her three children, 'I give to all of you this pie share and share alike,' certainly each child is entitled to receive a definite one-third of it."

When the highest court of a state overrules a long and consistent line of decisions for the purpose merely of substituting the opinion of the overrulers for the opinion of their predecessors, the court usurps the prerogative of the Legislature, and goes contrary to the spirit if not the letter of that provision in (Art. II of) the Constitution of Louisiana, and in the Constitution of every state, that the powers of government shall be divided into three distinct departments—the legislative, the executive and the judicial—and that no one of these dapartments nor any person nor collection of persons holding office in any one of them shall exercise power properly belonging to either of the two other departments.

In the Constitution of Massachusetts, in article 30 of Part the First, of which Article II of the Consitution of Louisiana is intended to be a counterpart, the three-department safeguard ends with these high-sounding and appropriate words: "to the end it may be a government of laws and not of men."

If the members of the Legislature, whose duty it is to correct any mistake that may be made in the interpretation of the laws by the highest court of the State—and who in this instance have tacitly approved the interpretation which this court has given to article 1707 of the Civil Code for these many years—had changed the meaning of the article, as it is being changed now by the prevailing opinion in this case, there would be no confusion among the lawyers, or the teachers or students of the law, as to when the new interpretation of this important article of the code should have effect. It is claimed in the prevailing opinion (p. 20 [28 So.2d 9]) that the court is changing the law as effectually as it could be changed by the Legislature itself. The author of the prevailing opinion says that "all per-

sons who have taken title to succession property relying on the overruled decisions will be unaffected by the change." His Honor adds:

"They have vested rights which can not be disturbed. They are protected under the law in effect at the time of the vesting of their interests."

But his Honor adds:

"Those who may receive under a future will—prospective legatees—have no vested rights in the estate concerned. The interests of beneficiaries under a will do not vest until after the death of the testator."

What reason, I ask, can the author of the prevailing opinion in this case have for believing—what assurance can he give— that his successors in office will have a higher regard for his opinion on the construction of article 1707 of the Civil Code than he has now for the opinion of his predecessors on that subject?

In the prevailing opinion in this case the fact is stressed that there was no provision in the Code Napoleon similar to article 194 of the Louisiana Code (or Digest) of 1808, which article was retained as article 1699 of the Code of 1825, and as article 1706 of the Revised Civil Code. The fact is stressed also that the Code Napoleon had no provision similar to article 197 of the Code (or Digest) of 1808 which became article 1702 of the Code of 1825 and is now article 1709 of the Revised Civil Code of Louisiana. The sub-stance of these provisions is that the right of accretion, with regard to testamentary successions, takes place only in cases of conjoint legacies, or in cases where a legacy is bequeathed to two or more legatees and cannot be divided without deterioration. But the omission of these provisions from the Code Napoleon is a matter of no importance. The important fact is that these provisions have been in the Civil Code of Louisiana continuously since the year 1808; that is, long before this court first decided that the mere declaration of equality, between or among the colegatees, such as "share and share alike" or "to be equally divided among them," is not an assignment of the part bequeathed to each colegatee, in the meaning of article 1707 of the Civil Code. And the two articles of the Civil Code, which were not in the Code Napoleon, have not been overlooked in any case decided by this court.

In every case where article 1707 of the Civil Code has been construed, it has been held that the mere statement in a testamentary disposition in favor of two or more colegatees that they shall share the legacy equally is not an assignment of the part of the legacy bequeathed to each legatee named in the bequest.

In Parkinson v. McDonough, 4 Mart., N.S., 246, decided in 1826—120 years ago —a legacy under an universal title bequeathed to four legatees, in the following words, was held to be a conjoint legacy,

notwithstanding the phrase "to be equally divided among them":

"I will and bequeath to the orphan children of my old friend Godfrey Duher, and which are now under my charge, and are named Mary, Nancy, James and Eliza, one share, or one-eighth part of all my property, *to be equally divided among them,*" et cetera. [The italics are mine.]

The decision was based not on the Civil Code of 1825 but on the Code (or Digest) of 1808—articles 195, 196 and 197, which articles were retained as 1700, 1701 and 1702 in the Code of 1825, and which are now, respectively, articles 1707, 1708 and 1709 of the Revised Civil Code. The decision was unanimous, by the court composed of George Mathews, Francois-Xavier Martin and Alexander Porter. In the opinion written by the presiding Justice Mathews it was said:

"The rules laid down on the subject of accretion, in relation to testamentary dispositions, are contained in arts. 195, 196, and 197, at page 250 of the former code. Art. 195 [now 1707] on the interpretation of which the present question depends, is expressed in the following words: 'Accretion shall take place for the benefit of the legatees, in case of the legacy being made to the several conjointly. The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of each co-legatee in the thing bequeathed.'"

The decision in Parkinson v. McDonough was cited with approval in the Succession of Wilcox, 165 La. 803, loc.cit. 810, 116 So. 192, loc.cit. 194, in 1928—102 years after the court had decided Parkinson v. McDonough. Having quoted the testamentary disposition in that case, the court stated in the Succession of Wilcox:

"Surely, there is no difference in the meaning between 'to be equally divided among them' and 'share and share alike.'"

A reference to Shepard's Citations discloses that the case of Parkinson v. McDonough, 4 Mart., N.S., 246, has been cited with approval four times by this court, once by the Supreme Court of the United States in a Louisiana case, once by the U. S. Circuit Court of Appeals for the Fifth Circuit, in another Louisiana case, and once by Tulane Law Review—always on the same point of law that is presented now in the Succession of Lambert.

The next case in which this question arose was Lebeau v. Trudeau, 10 La.Ann. 164, decided in 1855—91 years ago. The testamentary disposition which was held to be a conjoint legacy to the eight legatees named, in that case, was written in French and was translated, literally, thus:

"After my debts [are] paid, my property *shall be divided in equal proportions, among the* [8] *persons hereinafter named,* that is to say, Lezine Lebeau, Polixene Bertrand, John Demoruelle, Emma Bertrand, Jean Bertrand, Elizabeth Wilson, Laure Grous-

ard, L. H. Trudeau." [The italics are mine.]

At the death of the testator, his heirs at law, being his brothers and sisters and nephews and nieces, sued to set aside the bequest of one-eighth of the estate to Elizabeth Wilson, on the ground that she had been the concubine of the testator. The defendants, who were the colegatees in the clause of the will which purported to give one-eighth of the estate to Elizabeth Wilson, pleaded that the plaintiffs had no cause or right of action because if Elizabeth Wilson was the concubine of the testator and for that reason was incapable of receiving the legacy of one-eighth of his estate, that portion of the estate belonged to the defendants by accretion, they being her seven colegatees.

In deciding that that legacy, which was made by one and the same disposition, was made *without the testator's having assigned the part of each colegatee in the thing bequeathed,* Chief Justice Slidell, for the court, said:

"Article 1700 declares, that accretions shall take place for the benefit of the legatees, in case of a legacy being made to several conjointly; and that the legacy shall be reputed to be made conjointly, when it is made by one and the same disposition without the testator's having assigned the part of such [each] colegatee in the thing bequeathed. Article 1699 declares, that the right of accretion relative to testamentary dispositions, shall no longer

subsist, except in the cases provided for in the Arts. 1699 [1700] and 1701. And Article 1702 declares that except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, either to a legatee or to an instituted heir, or because the heir or the legatee has not been able or has not been willing to accept it, shall devolve upon the legitimate heirs.

"Now here, the legacy is made by one and the same disposition. Is it made without the testator's having assigned the part of each co-legatee in the thing bequeathed? I think it is.

" 'The assigning of the parts of each co-legatee' means something more than is comprehended in the language of this will, which, according to my understanding of it, simply directs their participation of [in] his whole estate *in equal portions.* I apprehend the terms used in the Code contemplate an express specification and assignment of the respective portions of the legatees, calling each to his particular part. But in the present case, there is not that specific and distinct assignment of the parts, which, in my judgment, is necessary to constitute a distinct legacy to each, of a distinct portion of the deceased's fortune. He appears to me, on the contrary, to have called them conjointly to partake equally in the totality of his estate, *and has mentioned the equality of their portions for the purpose of regulating the distribution of that*

*totality. They are conjointly his universal legatees."* [The italics are mine.]

Lebeau v. Trudeau is referred to in the prevailing opinion in this case (p. 10 [28 So.2d 5]) as a three-to-two decision. That is right. Chief Justice Slidell wrote the opinion for the court and Justices Ogden and Spofford concurred. Justice Buchanan wrote a dissenting opinion in which Justice Voorhies concurred. Which only goes to show that both sides of the case were considered thoroughly. The reasoning in the dissenting opinion of Justice Buchanan is the same as that on which the prevailing opinion in the present case is founded. The prevailing opinion in this case therefore is really an adoption of the dissenting opinion which was rejected in Lebeau v. Trudeau, 91 years ago.

A reference to Shepard's *Citations* discloses that the case of Lebeau v. Trudeau, 10 La.Ann. 164, has been cited with approval six times by this court, once by the Supreme Court of the United States in a Louisiana case, once by the U. S. Circuit Court of Appeals for the Fifth Circuit, in another Louisiana case, and once by Tulane Law Review—always on the same point of law that is presented now in the Succession of Lambert.

The next time the question arose was in 1876, in the case of Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986. The legacy was as follows:

"I will and bequeath to Henry C. Story and Benjamin S. Story all properties I die possessed of, *to be divided equally between them."* [The italics are mine.]

The legatees, Henry C. Story and Benjamin S. Story, were brothers of the testator, and one of them, Henry C. Story, died before the death of the testator. The heirs of the testator therefore claimed one-half of the legacy, but the court held that that half of the legacy which would have gone to Henry C. Story if he had survived the testator belonged to the colegatee, Benjamin S. Story, by right of accretion. In so deciding Justice Bradley, for the court, said:

"The court below decided that the legacy was a conjoint one, and that by the right of accretion the whole of it accrued *to* Benjamin; and in this opinion we concur. The civil law does not recognize the common-law distinction between joint tenancy and tenancy in common. * * *

"But in testamentary dispositions, the civil law does make a distinction between a conjoint legacy and a legacy of separate and distinct shares in the thing bequeathed. Where the whole thing bequeathed is given to two persons, if one of them fails to receive the benefit of the disposition, either because he dies before the testator, or is incapable to take it, or refuses to take it, or because as to him it is revoked, the whole goes to the other legatee by accretion; for the whole was given to both, and it is presumed to be the will of the testator that he shall not die intestate as to any part, but that the whole shall pass by his

will; and this, notwithstanding it may be divisible between the two legatees, if received by both."

Here Justice Bradley, after citing the opinions of several of the French commentators, proceeded with his opinion, thus:

"Many more French authorities to the same effect could be referred to; but it is unnecessary, as the Supreme Court of Louisiana has passed upon the question, and its decision is binding on us as a rule of property. In the case of Parkinson v. McDonough, 4 Mart. N.S., 246, decided in 1826, the substantive words of the bequest were the same as in the case before us, namely, 'I bequeath to the orphan children of my old friend Godfrey Duher, Mary, Nancy, James, and Eliza, one-eighth of all my property, to be equally divided among them:' and the decision was, that the legacy was conjoint, and consequently, that the portion of one of the legatees who died before the testator went by accretion to the survivors. * * *

"This decision [in Parkinson v. Mc-Donough] was followed by the same court in 1855, in the case of Lebeau v. Trudeau, 10 La.Ann. 164, which was even a stronger case in favor of assignment of separate parts than that of Parkinson v. McDonough, the words of the bequest being, 'After my debts are paid, my property shall be divided in equal proportions among the persons hereinafter named.' After naming the legatees, the testator says, 'I have here-

inbefore mentioned the names of the persons to whom I bequeath all my property.' After a full discussion of the question, it was decided that the legacy was conjoint, and that accretion took place. The court uses the following language: 'The assigning of the parts of each co-legatee means something more than is comprehended in the language of this will, which, according to my understanding of it, simply directs their participation of [in] his whole estate in equal portions. I apprehend the terms used in the Code contemplate an express specification and assignment of the respective portions of the legatees, calling each to his particular part. But in the present case, there is not that specific and distinct assignment of the parts which in my judgment is necessary to constitute a distinct legacy to each, of a distinct portion of the deceased's fortune. He appears to me, on the contrary, to have called them conjointly to partake equally in the totality of his estate, and has mentioned the equality of their portions for the purpose of regulating the distribution of that totality. They are conjointly his universal legatees.' "

A reference to Shepard's Citations discloses that the case of Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, has been cited with approval five times by this court, once by the U. S. Circuit Court of Appeals for the Fifth Circuit, in a Louisiana case, and once by Tulane Law Review—always on the same point of law that is presented now in the Succession of Lambert.

The next case in which arose the question which is now presented was the Succession of Dupuy, 33 La.Ann. 277, decided in 1881. The bequest which was held to convey a conjoint legacy was written in French, and is translated thus:

"I wish and intend that all the properties which I have not disposed of by this testament and which I may leave at the time of my death, be sold and that the proceeds thereof, as well as the cash I may have in banks or other places and the amount of mortgage or other notes which might be due me, be divided, after the payment of my debts, the legacies above made, and all expenses of my succession, be divided, I repeat, between my two above named daughters, Armantine and Eugenie Labiche; Marcelite Choteau, my sister, and in case of her default Dorestan Aubuchon, her son; Marie Louise Valentin, and my nephew Jules Birot, *by equal portions;* naming and instituting them my universal legatees." [Italics are mine.]

One of the five legatees, Marie Louise Valentin, died before the death of the testator. The provision, in the will, which the court decided did not convert the conjoint legacy into five separate legacies was the provision that the testator wished and intended that the residue of his estate should be divided *by equal portions* among the five residuary legatees named in the will. In so deciding the court (33 La.Ann. page 282) stated:

"Having never acknowledged his natural daughters, the testator had no forced heirs, and was, therefore, free of any restrictions in his testamentary capacity. In unmistakable language he instituted Louise Valentin, his two natural daughters, his sister and his nephew, as his universal legatees, providing specially that all property which he did not dispose of by particular legacy *should be equally divided between them.* [Italics are mine.] Now, Louise Valentin having died before him, the legacy in her favor became without effect (C.C. Art. 1697), and the portion intended for her, being thus undisposed of, inured by accretion to the benefit of the other universal legatees. C.C. Art. 1707; Parkinson v. McDonough, 4 [Mart.], N.S., 252; Lebeau v. Trudeau, 10 La.Ann. 164; Succession of Foucher, 18 La.Ann. 409."

The author of the prevailing opinion in the present case (p. 10 [28 So.2d 5]) attempts to distinguish the case of Succession of Dupuy from the present case by saying that the contest in the Succession of Dupuy was not between the heirs of the testator and the surviving residuary legatees, but was a suit by the testamentary executors to compel an adjudicatee at a judicial sale to accept the title. But, what difference does that make, so long as the question, as to whether the residuary legacy was a conjoint legacy, was squarely presented to the court for decision and was decided by the court?

A reference to Shepard's Citations discloses that the Succession of Dupuy, 33 La. Ann. 277, has been cited with approval twice by this court, once in a Note in 44 L.R.A.,N.S., p. 791, and once by Tulane Law Review—always on the same point of law that is presented now in the Succession of Lambert.

The next time the question arose was in the case of Waterman v. Canal-Louisiana Bank & Trust Co., 186 F. 71, 72, decided by the United States Circuit Court of Appeals for the Fifth Circuit, in March 1911. In that case the court dealt with a residuary legacy in the last will of Caroline Stannard Tilton. After bequeathing a number of special or particular legacies, in cash, to several individuals, respectively, the testatrix bequeathed several special or particular legacies in cash, ranging from $1,000 to $3,000 each, to a number of charitable institutions, which she named, and then bequeathed the residue of her estate to the same charitable institutions, thus:

" 'After satisfaction of all the foregoing special legacies and bequests, and after payment of all costs and expenses in settlement of my estate, if I have remaining any besides [residue] undisposed of, I will and direct that such residue *shall be divided between the beneficiaries of the charitable bequests heretofore made to various institutions; the division to be made pro rata, and in proportion to the amount of the special legacies already made them respectively.' "* [Italics are mine.]

Among the special legacies referred to was a legacy of $3,000, "To the Home for Insane." As there was no institution known generally as "Home for Insane," it was conceded by all parties that the legacy of $3,000 for the so-called Home for Insane lapsed because of the failure of the testatrix to identify the legatee. The question then was whether, under the paragraph of the will which I have quoted, the lapsed legacy of $3,000 should be divided pro rata among the other charitable institutions named in the will, or should go to the heirs of the testatrix. That question of course depended upon whether the legacy of the residue of the estate was a conjoint legacy to the several charitable institutions, or was a distributive legacy. After analyzing the opinion rendered in Parkinson v. McDonough, 4 Mart., N.S., 246 and in Lebeau v. Trudeau, 10 La.Ann. 164, the court decided that the residuary legacy in the will of Caroline Stannard Tilton was a conjoint legacy, and hence that the legacy of $3,000 which lapsed because of the failure to identify the legatee, Home for Insane, did not go to the heirs of the testatrix but went to the charitable institutions named as colegatees—"the division to be made pro rata, and in proportion to the amount of the special legacies already made them respectively." The pertinent paragraph of the syllabus of the opinion in Waterman v. Canal-Louisiana Bank & Trust Company is as follows:

"Civ.Code La. art. 1707, provides that accretion shall take place for the benefit of legatees in case a legacy is to several conjointly, and that the legacy shall be reputed to be made conjointly when it is made by one and the same disposition, without the testator having assigned the part of each co-legatee in the thing bequeathed, and article 1709 declares that except in the cases provided by such article, and by article 1708 (inapplicable), every portion of the succession remaining undisposed of shall devolve on the testator's legitimate heirs. Testator bequeathed pecuniary legacies to a number of legatees, and then bequeathed different amounts to six charitable institutions, among which was a bequest to the 'Home for Insane,' and then provided that the residue should be divided between the beneficiaries of the charitable bequests pro rata in proportion to the amount of the special legacies made to them. Held, that the residuary bequest was conjoint within article 1707, so that, on the failure of the legacy to the Home for Insane because of uncertainty, such legacy, together with the legatee's interest in the residue, passed to the other charitable legatees, and not to testatrix's heirs at law."

In the case of Waterman v. Canal-Louisiana Bank & Trust Co., 5 Cir., 186 F. 71, the U. S. Circuit Court of Appeals first dismissed the suit for want of jurisdiction. An appeal was taken to the Supreme Court of the United States to review the judgment of the U. S. Circuit Court of Appeals dismissing the suit. On appeal the judgment was reversed and the case remanded. See 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80. After the case was heard and decided on its merits by the U. S. Circuit Court of Appeals (186 F. 71), application was made for a writ of certiorari to the Supreme Court of the United States and was denied. See 220 U.S. 621, 31 S.Ct. 724, 55 L.Ed. 613. The attorneys who argued the case before both courts were Messrs. E. Howard McCaleb and the then E. Howard McCaleb, Jr., for the appellants, and Messrs. Edgar H. Farrar, James McConnel, Charles E. Fenner, George C. Walsh, George H. Terriberry, H. Garland Dupre, Walter Guion and Victor Leovy, with Messrs. William C. Dufour and S. McC. Lawrason on the brief, for the appellees. That array of legal talent should convince anyone that no point of law was overlooked in the presentation of the case.

The Succession of Villa, 132 La. 714, 61 So. 765, 769, decided in 1913, is dealt with only briefly—in only five lines and one word—in the prevailing opinion in this case. The opinion in Succession of Villa. deals very thoroughly with the question presented in the instant case—thus:

"Article 1707, C. C., on the subject of accretion, is as follows:

" 'Accretion shall take place for the benefit of the legatees, in case of the legacy made to several conjointly.

" 'The legacy shall be reputed to be made conjointly when it is made by one and the

same disposition without the testator's having assigned the part of each co-legatee in the thing bequeathed.'

"The article of the Code just quoted exactly follows that of France, and it has received from the French courts and jurists abundant construction." * * *

"Other French authorities [besides Duranton] to the same effect could be referred to; but it is unnecessary, as we have heretofore passed upon the question, *and the point is settled*. In the case of Parkinson v. McDonough, 4 Mart., N.S., 246, the substantive words of the bequest were the same as in the case before us, namely:

" 'I will and bequeath to the orphan children of my old friend Godfrey Duher, * * * Mary, Nancy, James, and Eliza, one share, or one-eighth of all my property, to be equally divided among them.'

"Our decision was that the legacy was conjoint, and consequently that the portion of one of the legatees who died before the testator went by accretion to the survivors. * * *

"The above decision was followed in Lebeau v. Trudeau, 10 La.Ann. 164. The language used by the testator in that case was:

" 'After my debts are paid, my property shall be divided in equal portions, among the persons hereinafter named.'

"After naming the legatees, the testator said:

" 'I have hereinbefore mentioned the names of the persons to whom I bequeath all of my property.'

"After a full discussion of the question, it was decided that the legacy was conjoint, and that accretion took place."

The next case in which the interpretation of article 1707 of the Civil Code, defining conjoint legacies, was construed was the Succession of Schonekas, 155 La. 401, 99 So. 345, 346, in 1924. The testamentary disposition in that case was like the one in contest in the present case. In the Schonekas case the bequest was made in one and the same testamentary disposition, and, as in this case, was coupled with the words "share and share alike". The legacy was in these words:

" 'In the event of my death, I give and bequeath unto my daughter Delia Schonekas, wife of Charles B. Kern, and Lillie Schonekas, divorced wife of Herman Roos, share and share alike, the disposable portion of my estate; that is so much, as the law will allow me to give to them, in addition to what they are entitled to as my children and heirs.' "

Delia Schonekas Kern, one of the two legatees, died before the testatrix died. The other legatee claimed that the legacy was a conjoint legacy, and that she therefore was entitled to the share which the deceased legatee would have received if she had survived the testatrix.

Inasmuch as the bequest was made by one and the same testamentary disposition,

the only question presented was whether the phrase "share and share alike" was an assignment of the part bequeathed to each of the colegatees, as required by the second paragraph of article 1707 of the Civil Code, in order to convert the conjoint legacy into a distributive legacy.

The case came before this court at the time when the court was divided into sections, or divisions, composed of only three judges each. The three judges who alone passed upon the Schonekas Case held that the legacy was not a conjoint legacy, but a distributive legacy, because of the words "share and share alike." The heirs of the testator did not apply for a rehearing; hence a majority of the members of the court had no opportunity to consider the question whether the legacy was a conjoint or a distributive legacy. But, in the Succession of Wilcox, 165 La. 803, 116 So. 192, 194, decided in 1928, where the court held that the phrase "share and share alike" did not convert a residuary legacy in favor of two or more legatees into a distributive legacy, two of the three members of the court who had subscribed to the decision in the Succession of Schonekas reversed their decision, and subscribed to the decision in the Succession of Wilcox. One of these two subscribers handed down a concurring opinion in the Succession of Wilcox, saying that he was then convinced that he had erred in yielding his assent to the conclusion reached in the Succession of Schonekas.

Afterwards, in the Succession of Maus, 177 La. 822, 149 So. 466, decided in 1933, all of the three justices who alone had rendered the decision in the Succession of Schonekas, subscribed to the opposite opinion in the Succession of Maus. In fact, the author of the opinion rendered in the Succession of Schonekas handed down a concurring opinion in the Succession of Maus, saying that he concurred in the decree on the ground that the legacy in the Succession of Maus was a residuary legacy. Another one of the three justices who had subscribed to the decision in the Succession of Schonekas rendered a short concurring opinion in the Succession of Maus, in which he declared that the fact that the legacy was a residuary legacy had nothing to do with its being a conjoint legacy. Inasmuch as the decision rendered in the Succession of Schonekas, by the three-judge section of the court, was promptly repudiated by two of the three judges who rendered it, and was declared afterwards by its author to be not applicable to a residuary legacy, the case should be considered as the first case in which it was decided, eventually, that the phrase "share and share alike", in a bequest to two or more colegatees, is not an *assignment of parts,* in the meaning of article 1707 of the Civil Code.

In the Succession of Wilcox, 165 La. 803, 116 So. 192, 193, the bequest was:

" 'The remainder of my estate, after the payment of the special legacies herein-

above provided for, I will and bequeath unto my nieces, Blanche Edge, born Williams, wife of J. M. Edge, Margaret Burnet, born Williams, wife of Joe H. Burnet, Mary Jane Russell, born Williams, wife of Wright Russell, and to my nephews, Thomas G. Williams and Willis W. Williams, share and share alike.' "

One of the five colegatees, namely, Willis W. Williams, died before the testatrix died. The heirs of the testatrix therefore claimed that the share which would have gone to Willis W. Williams, of the residue of the estate, if he had survived the testatrix, that is, the fifth of the residue, was inherited by the heirs of the testatrix.

But the court held that the four surviving colegatees were entitled to share by right of accretion the share which would have gone to Willis W. Williams if he had survived the testator, because the legacy was a conjoint legacy, notwithstanding the phrase "share and share alike". On that subject the court said:

"It is argued on behalf of the appellees [heirs of the testatrix] that the universal or residuary legacy was not a conjoint legacy, but a legacy of one-fifth of the residue of the estate to each of the five legatees named, because of the expression in the will, 'share and share alike.' It is said that the meaning and effect of the expression 'share and share alike' is the same as if the testatrix had given, in terms, to each one of the five legatees named,

separately, one-fifth of the residue of her estate. Our opinion, to the contrary, is that the expression 'share and share alike' had no particular reference to the number of the residuary legatees, or to the fractional part which each should receive of the residue of the estate, but meant merely that the residue of the estate should be divided equally among the residuary legatees, without regard for the number of them.

"Our only function is to determine and carry out the intention of the testatrix, if it can be determined from the language of the will; and, with that in mind, it seems unreasonable to suppose that the testatrix intended,' in giving the residue of her estate to the five named universal legatees with the direction that they should 'share and share alike,' but without even mentioning the number of them, that, if one of them should die, the remaining four should take only four-fifths of the residue of the estate. The presumption that the testatrix did not intend that any part of her estate should remain undisposed of by her will arises from the fact itself that, after giving the several special legacies to the particular legatees named, she disposed of the entire residue of her estate".

Here the court quoted in full articles 1706, 1707, 1708 and 1709 of the Civil Code, and proceeded as follows:

"The expression in the second paragraph of article 1707, 'without the testator's having assigned the part of such colegatee,'

means without the testator's having assigned the part of each colegatee. In the French text of the corresponding article—1700—of the Code of 1825, the words which have been translated erroneously into 'the part of such colegatee' are 'la 'part de chacun des colégataires'—meaning, literally, 'the part of each one of the colegatees.' In the case before us, therefore, the residuary legacy was intended to be a conjoint legacy, because, as article 1707 of the Code provides, it was made by one and the same disposition, without the testator's having assigned the part or share of each one of the colegatees."

Here the court quoted from Parkinson v. McDonough, 4 Mart., N.S., 246, and from Lebeau v. Trudeau, 10 La.Ann. 164, and from Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, the legacy which was declared to be a conjoint legacy in each of those cases; and referring especially to Parkinson v. McDonough the court said:

"Surely, there is no difference in the meaning between 'to be equally divided among them' and 'share and share alike.' "

The court explained that that expression "share and share alike" or "to be equally divided among them", like the expression in Lebeau v. Trudeau "shall be divided, in equal portions, among the persons hereinafter named," and like the expression in Mackie v. Story, "to be divided equally between them," was not an assignment of the part bequeathed to each colegatee, as required by article 1707 of the Civil Code to convert a conjoint legacy into a distributive legacy.

In that connection the court distinguished the case of Compton v. Prescott, 12 Rob. 56, relied upon by the heirs of the testatrix, Miss Wilcox, as an example of an assignment of the part bequeathed to each colegatee in a bequest made to several legatees by one and the same testamentary disposition—thus:

"In Compton v. Prescott, the residuary legacy to four nieces of the testator was held to be not a conjoint legacy, because the testator declared plainly that he gave one-fourth of the estate to each one of the legatees, viz.:

" 'To be equally divided between [among] them, that is to say: One-fourth to Amelia, one-fourth to Mary Celeste, one-fourth to Eleanor, and one-fourth to Sarah Jane.' "

But there is a marked difference between an assignment of fractional parts, such as one-fourth of the legacy to each of four colegatees, and the expression "share and share alike", which has reference to the number of legatees living when the will takes effect, i.e., at the date of the death of the testator.

In the prevailing opinion in the present case (p. 13 [28 So.2d 6]) the author quotes what I have quoted from the opinion rendered in the Succession of Wilcox; and he makes the following criticism, which seems to charge that there was inconsistency in the opinion rendered in that case —thus:

"By this language it would seem that recognition was being impliedly given to the distinction drawn by the French commentators and incorporated in our earlier jurisprudence, and that the words 'share and share alike' were being interpreted as affecting merely a division of the execution or enjoyment of the gift, although the will contained no words providing for a division operative in the future and justifying an interpretation of that kind. Later in the opinion, however, in reference to the Parkinson case, it was said that, 'Surely, there is no difference in the meaning between "to be equally divided among them" and "share and share alike."' This indicates a refusal by the court in the Wilcox case to recognize the subtle distinction to which recognition was given in the former decisions."

I do not believe it would be possible for me, as the author of the opinion rendered in the Wilcox case, to make plainer my interpretation of the words "share and share alike." To say that "the will contained no words providing for a division operative in the future and justifying an interpretation of that kind" is simply to overlook the fact that the will was to take effect in the future, that is, at the time of the death of the testator.

In his criticism, the author of the prevailing opinion rendered in the present case, overlooks the difference, in that respect, between a donation mortis causa and a donation inter vivos—as he does in the example which he gives, in this prevailing opinion, of a mother saying to her three children 'I give to all of you this pie, share and share alike.'" In that illustration of course the sharing and sharing alike was to be done at the moment of the giving of the pie. But if the gift had been a donation mortis causa of the residue of the mother's estate, the phrase "share and share alike" would have had reference to the future, that is, the date of her death.

I find it particularly difficult to explain more plainly the finding in the Succession of Wilcox,—of which the following complaint is made on the 13th page of the prevailing opinion [28 So.2d 6],—which complaint I repeat—thus:

"Later in the opinion, however, [in the Succession of Wilcox] in reference to the Parkinson case, it was said that, 'Surely, there is no difference in the meaning between "to be equally divided among them" and "share and share alike"'. This indicates a refusal by the court in the Wilcox case to recognize the subtle distinction to which recognition was given in the former decisions."

There was no recognition given in the former decisions of any "subtle distinction"—or of any distinction at all—between the meaning of the phrase "to be equally divided among them" and the phrase "share and share alike". That is why, in the Succession of Wilcox, the court did not observe that any such subtle distinction was recognized in the former de-

cisions of this court, between the phrase "to be equally divided among them" and the phrase "share and share alike".

In the Succession of Maus, 177 La. 822, 149 So. 466, decided in 1933, the residuary bequest which was held to convey a conjoint legacy, notwithstanding the phrase "share and share alike," was as follows:

"After all debts are paid, I will and bequeath the balance of my estate, if any, to my Dear Mother, and my Dear Sisters, Mrs. Gus F. Heausler, Mrs. L. J. Franz and Mrs. George McIntyre, share and share alike."

One of the colegatees, Mrs. George McIntyre, died more than a year before the testator died. The heirs of the testator claimed that the phrase "share and share alike" constituted an assignment of the fractional part of the legacy to each of the colegatees, that therefore the legacy was not a conjoint legacy, and hence that they, the heirs of the testator, inherited the one-fourth share which would have gone to Mrs. McIntyre if she had survived the testator. But the court, after quoting articles 1706, 1707, and 1708 of the Civil Code, the Succession of Wilcox, 165 La. 803, 116 So. 192, and Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, and the Succession of Villa, 132 La. 714, 61 So. 765, held that the legacy was a conjoint legacy, notwithstanding the phrase "share and share alike." The court therefore affirmed the judgment of the civil district court dismissing the suit of the heirs of the testator. The late

Justice Land, in delivering the opinion for the court, said:

"It is immaterial, in our opinion, that the residuum may be divisible between the universal legatees. The words 'share and share alike' and 'to be equally divided between them,' when added to a legacy, are terms of similar import, and only express what the law would imply without them. They do not alter the character of the legacy. Succession of Wilcox, 165 La. 803, 116 So. 192; Mackie v. Story, 93 U.S. 589, 23 L.Ed 986."

The author of the prevailing opinion in the present case calls attention to the fact that the last two sentences in the paragraph which I have quoted from the opinion written by the late Justice Land, in the Succession of Maus, are taken almost verbatim from the opinion rendered by Justice Bradley in Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986. What Justice Bradley said was this: "Hence the words 'to be divided equally between them' added to such a legacy only express what the law would imply without them. They do not alter the character of the legacy; they are only descriptive of it." The author of the prevailing opinion in this case (p. 15 [28 So.2d 7]), therefore, charges the seven justices who signed the opinion in the Succession of Maus with injecting some common-law principles into the law of Louisiana, contrary to the principles announced in the Civil Code,—thus:

"What this court did in the Maus case, therefore, was to inject into Louisiana

testamentary law some common law principles that are contrary to those enunciated by our Civil Code."

With due respect I think that that is a mistake. The principle which governed the decision in the Succession of Maus, as disclosed by the quotation from the opinion rendered in that case, was not contrary to article 1707 or to any other article of the Civil Code. That is shown by the citations on which the decision was rested, namely, Succession of Wilcox, 165 La. 803, 116 So. 192, and Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986. In neither of those decisions did the court "inject into Louisiana testamentary law some common law principles that are contrary to those enunciated by our Civil Code."

The decision rendered in the Succession of Wilcox, and affirmed in the Succession of Maus, was affirmed again as late as 1940, in the Succession of Blossom, 194 La. 635, 194 So. 572, 576. In that case the testatrix bequeathed to an adopted daughter the usufruct of the property of the testatrix and declared that at the death of the adopted daughter the property should be "equally divided" between two legatees, namely, Evelyn B. Kern and George D. Marshall. George D. Marshall died before the testatrix died. The adopted daughter, as the heir of the testatrix, sued to annul the bequest on the ground that it was a prohibited substitution, and, in the alternative, the adopted daughter claimed that she was entitled to that portion of the estate that was bequeathed to George D. Marshall, the legatee who had died. This alternative demand was founded upon the argument that the legacy to the two legatees was not a conjoint legacy. The court held that giving the usufruct of the property to one legatee, and at her death dividing the property between the two other legatees, was not a prohibited substitution; and, in response to the alternative claim, that the legacy to the two legatees was not a conjoint legacy, the court said:

"Under the ruling in Succession of Wilcox, 165 La. 803, 116 So. 192, and Succession of Maus, 177 La. 822, 149 So. 466, Evelyn B. Kern and George D. Marshall were conjoint legatees, and, as George D. Marshall died prior to the date of the death of the testatrix the bequest to him lapsed, under Article 1697 of the Civil Code, and goes to Miss Kern, the other legatee."

The ruling in the Succession of Blossom therefore was that the bequest, "I wish this property to be equally divided between" the two named Legatees, did not convert the conjoint legacy into a distributive legacy. And in that connection the court likened the expression "to be equally divided" to the phrase "share and share alike," which the court had passed upon in the Succession of Wilcox and in the Succession of Maus.

In the prevailing opinion in the present case (p. 15 [28 So.2d 7]) it is said:

"In Succession of Blossom, 194 La. 635, 194 So. 572, 573, the court, *without com-*

*ment,* held that the will under consideration contained a conjoint legacy, citing as 'authority for the holding the Wilcox and Maus decisions." [Italics are mine.]

What further comment was necessary, I ask with due respect, than to cite as authority for the holding the Wilcox and Maus decisions. They were not only good authority but expressed the unanimous opinion of this court until they were overruled in the present case. The two senior members of the group of justices who subscribe to the prevailing opinion in the present case subscribed also to the unanimous opinion rendered in the Succession of Blossom, where the court held that the will under consideration contained a conjoint legacy, citing as authority for the holding the Wilcox case and the Maus case. None of the group of justices who have subscribed to the prevailing opinion in the present case was a member of this court when the decisions on this subject were rendered previous to the unanimous opinion rendered in the Succession of Blossom.

It is said in the prevailing opinion in the present case (p. 16 [28 So.2d 7]) that the last case in our jurisprudence on the subject of testamentary accretion is the Succession of Lacoume, 1944, 205 La. 511, 17 So.2d 726, 727; from which the clause which was in contest there is quoted,—thus:

"One-third of my estate after paying the bequest to my sister to the children of my deceased son, Charles Lacoume, Jr., to-wit: Louis Lacoume and Hortense Lacoume, wife of Henry Arnold."

Before the testator died, one of the legatees, Louis Lacoume, died, leaving three children. The colegatee, Mrs. Hortense Lacoume Arnold, contended that the bequest to her and her brother, Louis Lacoume, conveyed a conjoint legacy, and hence that she was entitled by accretion to the portion bequeathed to Louis Lacoume. The contest was between Mrs. Hortense Lacoume Arnold and the three children of the deceased colegatee, Louis Lacoume. The court found from certain facts in the will itself and in a codicil to the will that the testatrix had intended to divide her estate by "roots," and hence that the three children of the deceased legatee, Louis Lacoume, were entitled to the one-sixth of the legacy bequeathed to him. Hence the author of the opinion said that, in view of that conclusion, the law of conjoint legacies and the doctrine of accretion were not applicable. If the decision in the present case is to be governed by the ruling in the Succession of Lacoume, as I understand it, only one of the plaintiffs in this suit, namely, Albert E. Lambert, is entitled to the share which was bequeathed to his father, Albert Lambert, in the residuary legacy, because Albert E. Lambert is the only direct descendant heir of his father, Albert Lambert. In the decree rendered in the present case, the exceptions of no cause and no

right of action are overruled and the case is remanded to the civil district court for further proceedings according to law and consistent with the views expressed in the prevailing opinion. If by that decree the court intends that this case shall be governed by the decision in the Succession of Lacoume, as I understand it, only one of the plaintiffs, Albert E. Lambert, will have a right of action. I do not believe that a majority of the members of the court intend such a result.

There appears in Volume XIX. No. 2, of the Tulane Law Review, for December 1944, pp. 278–289, an interesting article on the Right of Accretion in Conjoint Legacies. The author cites with approval the decision in Parkinson v. McDonough, 4 Mart., N.S., 246; Lebeau v. Trudeau, 10 La.Ann. 164; Succession of Wilcox, 165 La. 803, 116 So. 192; Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986; and the French commentators on the subject; and he explains away the ruling in the Succession of Schonekas, 155 La. 401, 99 So. 345. He declares that the decision in Lebeau v. Trudeau definitely sets out the test for determining whether a legacy given to several persons is conjoint. After explaining that, if the words used by the testator merely direct how the legatees are to participate, the legacy is conjoint, the author proceeds thus:

"On the other hand, if the testator assigns to each particular legatee his portion in the legacy, calling each legatee to his particular part, then the legacy is one of distinct and separate parts in which the right of accretion does not take place [citing Succession of Wilcox]. However, this assignment must be clear and distinct. Thus, the stipulation, 'I leave to John, Mary and Paul the disposable portion of my estate to share and share alike,' has been held to refer only to the mode of execution of the will. Such a legacy is therefore a conjoint legacy, in which the other legatees benefit by accretion in case of the death or refusal to accept on the part of one of the legatees.

"This line of thinking is more or less similar to the interpretation given by the French commentators to the second paragraph of Article 1044 of the French Civil Code, [citing the French commentators] to the effect that 'a legacy shall be considered as having been made jointly when it is made by one and the same provision and when the testator has not specified the share of the thing bequeathed which each legatee is to take.' "

\* \* \* \* \* \*

"The Supreme Court of the United States agreed with this doctrine as early as 1876, when it decided a case coming up from Louisiana [Mackie v. Story]. In that case, the testator made a will, the third paragraph of which contained the provision, 'I will and bequeath to Henry C. Story and Benjamin S. Story all properties I die possessed of, *to be divided equally between* them.' " [Italics are mine.]

In the Succession of Fertel, 208 La. 614, 23 So.2d 234, 238, decided less than a year ago, it was said:

"When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole."

In the paragraph which we have quoted from Mackie v. Story, is the following excerpt:

"Where the whole thing bequeathed is given to two persons, if one of them fails to receive the benefit of the disposition, either because he dies before the testator, or is incapable to take it, or refuses to take it, or because as to him it is revoked, the whole goes to the other legatee by accretion; for the whole was given to both, *and it is presumed to be the will of the testator that he shall not die intestate as to any part, but that the whole shall pass by his will;* and this, notwithstanding it may be divisible between the legatees, if received by both." [Italics are mine.]

The Legislature has held nine regular sessions and fifteen extraordinary sessions during the eighteen years since the decision was rendered in the Succession of Wilcox, and has held six regular sessions and ten extraordinary sessions during the thirteen years since the decision was rendered in the Succession of Maus. In both of those cases the court construed the second paragraph of article 1707 of the Civil Code, which provides that a legacy which is given by one and the same testamentary disposition shall be considered a conjoint legacy unless the testator has "assigned the part of such [each] colegatee in the thing bequeathed." And in each case the court held that the trite phrase "share and share alike" was not an assignment of the part bequeathed to each colegatee, in the meaning of article 1707 of the Civil Code.

If that interpretation, which we gave to such an important article as article 1707 of the Civil Code, in the Succession of Wilcox and in the Succession of Maus, had not had the approval generally of the members of the profession of law, someone would have brought the matter to the attention of the Legislature and the error—if it had been considered an error—would have been corrected long ago. The law schools in Louisiana—and their law journals—would not have neglected their duty in that respect; nor would the Louisiana State Law Institute, or the Committee on Jurisprudence and Law Reform of the Louisiana State Bar Association, or the like Committee of the New Orleans Bar Association, have overlooked the matter, if the court's interpretation of this article of the Civil Code—of such general importance—had been considered a wrong interpretation.

For the reasons given I respectfully dissent from the decision rendered in this case.

O'NIELL, Chief Justice (dissenting from the court's overlooking a certain rule of statutory construction).

A fundamental rule of statutory construction, which is overlooked in the prevailing opinion in this case, is that, when the highest court of a state places its construction upon a statute of the state ·the construction becomes a part of the statute; so that, if the statute, after being interpreted by the highest court, is re-enacted without any material change, the presumption is that the Legislature intends that the same interpretation shall be given to the statute as re-enacted. La Selle & Brother v. Whitfield, 12 La.Ann. 81; James v. Thompson, 12 La.Ann. 174; King v. Lastrapes, 13 La.Ann. 582; State v. Brewer, 22 La.Ann. 273; Crescent Bed Co. v. City of New Orleans, 111 La. 124, 35 So. 484; Lehman v. Lehman, 130 La. 960, 58 So. 829; Frank v. Waters, 162 La. 255, 110 So. 413.

Sutherland on Statutory Construction, p. 336, sec. 256, states the rule thus:

"In the interpretation of re-enacted statutes the court will follow the construction which they received when previously in force. The legislature will be presumed to know the effect which such statutes originally had, and by re-enactment to intend that they should again have the same effect." Citing among other cases State v. Brewer, 22 La.Ann. 273, 274.

The rule is stated in Black's Law of Judicial Precedents, p. 235, thus:

"A statute literally or substantially re-enacting a prior statute after its words have received a judicial interpretation must be regarded as adopted with knowledge of such construction and with the intention that it should thereafter be interpreted in the same way. Therefore the prior decisions, in which the construction of the statute was settled, are binding precedents for its interpretation after the re-enactment."

The rule is stated in Crawford on Statutory Construction, p. 437, sec. 233, thus:

"Generally, where a statute, or a provision thereof, has been re-enacted by the legislature in the same or substantially the same language, the law-makers are presumed to have adopted the construction placed upon such statute or provision by the court of last resort in the state, unless the statute as reenacted clearly indicates a different intention."

From the opinion in James v. Thompson, 12 La.Ann. 174, loc. cit. 175, I quote the following:

"The reenactment of the statute subsequent to the decision of the case of Lay v. Boyce, 3 La.Ann. 622, without any change in its provisions, affords, we think, a sufficient indication of the concurrence of the legislative will in the construction thus given to it."

From the opinion in King v. Lastrapes, 13 La.Ann. 582, loc. cit. 583, I quote the following paragraph:

"The interpretation of this section of the Act of 1842, by the Supreme Court, was

known to the lawyers in the Legislature of 1855, who were charged with the general revision of the statutes; and they could easily have prevented, in the future, this interpretation by the insertion of a few words. As they did not do so, they consequently adopted and reenacted the Act of 1842, as interpreted by the published decisions of the Supreme Court."

From the opinion in State v. Brewer, 22 La.Ann. 273, loc. cit. 275, I quote the following paragraph:

"These decisions and opinions were matters of record and publication, and formed an important chapter in the jurisprudence of the State when the Legislature of 1870 adopted the revisory laws which we are now considering. We must presume that the Legislature had them in view when they made use of the repealing clause which had been so fully interpreted; and even if we doubt the correctness of the interpretation, we can hardly imagine a case in which the interests of society more loudly demand an obedience to the rule stare decisis."

In the opinion rendered in Crescent Bed Co. v. City of New Orleans, 111 La. 124, 35 So. 484, the rule is stated thus:

"The rule is that when an act or part thereof that has received a judicial interpretation is re-enacted in the same terms, that construction must be considered to have the sanction of the legislative body, unless the contrary appears."

I quote now the second paragraph of the syllabus of the decision in Lehman v. Lehman, 130 La. 960, 58 So. 829, thus:

"Where a statute or an article of the Code has been reenacted without change, the interpretation which had been placed upon it by the Supreme Court must be considered as having been adopted along with it."

And, from Frank v. Waters, 162 La. 255, 110 So. 413, I quote the second paragraph of the syllabus, thus:

"Where statute, previously interpreted by Supreme Court, has been re-enacted, without material change, presumption is that Legislature intended same interpretation to be placed on re-enacted act."

Now, let us see how unavoidable is the application of this rule of statutory construction to article 1707 of the Civil Code, which was article 1700 in the Code of 1825, and was article 195 in the Code (or Digest) of 1808. The article declares that a legacy shall be considered as being made conjointly when it is made to two or more legatees by one and the same testamentary disposition without the testator's having assigned the part bequeathed to each colegatee in the thing bequeathed. Therefore, when a legacy is bequeathed to two or more legatees by one and the same testamentary disposition, as in this case, the only question is whether the words used in the testamentary disposition, such as "share and share alike" or "to be equally divided", do or do not constitute an assignment of the fractional part

of the legacy bequeathed to each colegatee. That question, of course, depends upon the interpretation of the article of the Civil Code.

In Parkinson v. McDonough, 4 Mart.,N. S., 246, the court interpreted article 195 of the Code (or Digest) of 1808, in a case arising previous to the adoption of the Code of 1825, and held that the phrase "to be equally divided among them," in a legacy under an universal title, in favor of four legatees, did not constitute an assignment of the fractional part bequeathed to each colegatee.

Meanwhile the Legislature had adopted the Code of 1825, in which article 195 of the Code of 1808 was retained, word for word, as article 1700.

Thereafter, in 1855, in the case of Lebeau v. Trudeau, 10 La.Ann. 164, this court interpreted the same article, as re-enacted, and held that a testamentary disposition declaring that the testator's property "shall be divided in equal proportions" among eight legatees, named in the bequest, did not constitute an assignment of the fractional part bequeathed to each colegatee. It was in that case that the court discussed and construed not only article 1700 of the Code of 1825 but also articles 1699 and 1702, the provisions of which—as pointed out in the prevailing opinion in the present case—were not in the Code Napoleon.

Therefore, when the Legislature adopted the Revised Civil Code of 1870, and retained article 1700 of the Code of 1825 as article 1707 of the Revised Civil Code without any change whatever, the Legislature, according to the established rule of statutory construction, which I have quoted, re-enacted the article of the Civil Code with the interpretation which this court had given to it in the case of Lebeau v. Trudeau in 1855.

Six years afterwards, that is, in 1876, the Supreme Court of the United States, in the Louisiana case of Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, construed article 1707 of the Revised Civil Code exactly as this court had construed article 1700 of the Code of 1825 in the case of Lebeau v. Trudeau, and held that the phrase "to be divided equally between them", in a testamentary disposition in favor of two residuary legatees, did not constitute an assignment of the fractional part of the legacy bequeathed to each colegatee. In deciding the case the Supreme Court of the United States quoted extensively from the opinion which had been rendered in Lebeau v. Trudeau, interpreting article 1700 of the Code of 1825.

Five years later, that is, in 1881, in the Succession of Dupuy, 33 La.Ann. 277, this court, again construing article 1707 of the Revised Civil Code, held that a residuary legacy, bequeathed to five legatees, was a conjoint legacy in spite of the phrase in the bequest "by equal portions." In giving this interpretation to article 1707 the court cited Parkinson v. McDonough, 4 Mart.,N.S.,

246, interpreting article 195 of the Code of 1808, and Lebeau v. Trudeau, 10 La.Ann. 164, interpreting article 1700 of the Code of 1825.

Thereafter, in 1911, in the case of Waterman v. Canal-Louisiana Bank & Trust Co., 186 F. 71, the United States Circuit Court of Appeals for the Fifth Circuit, in another Louisiana case, gave the same interpretation to article 1707 of the Revised Civil Code that had been given to article 195 of the Code of 1808 in Parkinson v. McDonough, 4 Mart.,N.S., 246, and that had been given to article 1700 of the Code of 1825 in Lebeau v. Trudeau, 10 La.Ann. 164; and the Federal Court then cited both of those cases to support its interpretation of article 1707 of the Revised Civil Code.

In 1913, a similar interpretation was given to article 1707 of the Revised Civil Code in the Succession of Villa, 132 La. 714, 61 So. 765.

In 1924, in the Succession of Schonekas, 155 La. 401, 99 So. 345, the three judges forming the division of the court by whom alone the case was considered gave what two of them admitted afterwards was the wrong interpretation of article 1707 of the Civil Code, and what the other one of them admitted afterwards was not applicable to a residuary legacy.

Four years afterwards, in the Succession of Wilcox, 165 La. 803, 116 So. 192, 194, two of the three justices who had decided the case of Succession of Schonekas acknowledged that they had given the wrong

interpretation to article 1707, and they then concurred in the ruling that the phrase "share and share alike" in a residuary bequest to two or more legatees was not an assignment of the part of the legacy bequeathed to each colegatee. And, in 1933, in the Succession of Maus, 177 La. 822, 149 So. 466, 467, the same two justices acknowledged again that the phrase "share and share alike" in a bequest to two or more colegatees was not an assignment of the fractional part of the legacy bequeathed to each colegatee. In this latter decision the third member of that division of the court that had decided the case of Succession of Schonekas, being in fact the member who had written the opinion in that case, handed down a concurring opinion declaring that the ruling in the Succession of Schonekas was not applicable to a residuary legacy. The legacy in the present case, in which appears the phrase "share and share alike", is a residuary legacy.

And so, in 1928, in the Succession of Wilcox, the court again definitely construed article 1707 of the Civil Code to mean that the phrase "share and share alike" was not an assignment of the fractional part bequeathed to each colegatee in a residuary legacy to five legatees.

And again, in the Succession of Maus, in 1933, when the author of the opinion rendered in the Succession of Schonekas, namely, Justice Overton, was yet a member of this court, and with all of the seven justices participating, the court decided unani-

mously that a residuary legacy bequeathed to four legatees was, according to article 1707 of the Civil Code, a conjoint legacy, in spite of the phrase "share and share alike."

As late as 1940, in the Succession of Blossom, 194 La. 635, 194 So. 572, 573, it was decided unanimously, by the court composed of the present Chief Justice, and Justices Land, Rogers, Odom, Higgins, Fournet and Ponder, that, according to article 1707 of the Revised Civil Code, and according to the ruling in the Succession of Wilcox and in the Succession of Maus, the residuary legacy in question was a conjoint legacy, in spite of the phrase "to be equally divided between" the two named legatees. In that case the interpretation of article 1707 of the Revised Civil Code was stated in only these few words:

"Under the ruling in Succession of Wilcox, 165 La. 803, 116 So. 192, and Succession of Maus, 177 La. 822, 149 So. 466, Evelyn B. Kern and George D. Marshall were conjoint legatees, and, as George D. Marshall died prior to the death of the testatrix, the bequest to him lapsed, under Article 1697 of the Civil Code, and goes to Miss Kern, the other legatee."

That quotation, taken from the opinion written by Justice Odom in the Succession of Blossom, discloses that, as late as the year 1940, *four members of this court as it is now constituted* expressed their approval of the decision rendered in the Succession of Wilcox in 1928, and repeated in the Succession of Maus in 1933, that the residuary legacy in each of those cases was a conjoint legacy in spite of the phrase "share and share alike." The legacy in contest in this case, Succession of Lambert, in which appears the phrase "share and share alike," also is a residuary legacy.

With due respect I doubt that there was ever a decision which so plainly ignored a rule of statutory construction as the decision in this case ignores the rule that when a statute has been construed by the highest court of the State and thereafter has been re-enacted without any change in the wording of the statute the presumption is that the Legislature intends that the statute as re-enacted shall be interpreted the same as it was interpreted by the court before it was re-enacted.

If the defendant in this case, Robert Vincent Lambert, is to be denied the benefit of that rule of statutory construction, the court ought to overrule the several decisions in which the litigants have been allowed the benefit of the rule, and which I have quoted—namely, LaSelle & Brother v. Whitfield, 12 La.Ann. 81; James v. Thompson, 12 La.Ann. 174; King v. Lastrapes, 13 La.Ann. 582; State v. Brewer, 22 La. Ann. 273; Crescent Bed Co. v. City of New Orleans, 111 La. 124, 35 So. 484; Lehman v. Lehman, 130 La. 960, 58 So. 829; Frank v. Waters, 162 La. 255, 110 So. 413. To maintain that the winners of those cases were entitled to the benefit of this rule of statutory construction, and, at the same

time and without giving any reason therefor, to deny the defendant in this case the benefit of the rule, is to deny him the equal protection of the law.

No attempt is made in the prevailing opinion in this case to justify denying the defendant in this case the benefit of the rule of statutory construction which was allowed to the winners of the several cases which I have cited. Why should the court stop at overruling the decision in the Succession of Wilcox and in the Succession of Maus—and the many decisions which preceded them—and the one which followed and affirmed them? Why not expressly overrule also the decisions in which this rule of statutory construction was applied, or give some reason for refusing to apply the rule to this case? It cannot be that, in the estimation of the five justices who subscribe to the prevailing opinion in this case, the court's original interpretation of article 195 of the Code of 1808, which became article 1700 of the Code of 1825, and became article 1707 of the Revised Civil Code of 1870, was so obviously wrong, as expressed in those decisions, that the court should overrule them, even at this late date, instead of leaving it to the Legislature to change the law if it needs to be changed. The best proof that those old decisions, interpreting originally and consistently this article which has remained in the Civil Code unchanged for 138 years, were not obviously wrong—or wrong at all for that matter—is that they represent the deliberate judgment of many jurists of recognized ability, whose names are a part of the judicial history of this state. Their interpretation of article 195 of the Code of 1808—article 1700 of the Code of 1825—could not have stood as it has stood the test of approval of both the legislative and the judicial department of the government for so many years if that interpretation was so unsound that it should be put aside now by the court itself, or by any authority other than an act of the Legislature. I refer, of course, to Justices George Mathews, Francois-Xavier Martin, and Alexander Porter, who composed the court which decided unanimously the case of Parkinson v. McDonough, 4 Mart.,N.S., 246, in 1826. I refer to Chief Justice Slidell, and Justices Ogden and Spofford, who decided the case of Lebeau v. Trudeau, 10 La.Ann. 164, 91 years ago, in the light of the dissenting opinion then written by Justice Buchanan and concurred in by Justice Voorhies.

I refer also to Justice Bradley, of the Supreme Court of the United States, and the exhaustive opinion which he wrote for the court, in Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, in 1876. Justice Bradley did not merely adopt the decision rendered by this court in Parkinson v. McDonough or the one in Lebeau v. Trudeau, but dealt thoroughly with the subject, and especially with the doctrine of joint tenancy and tenancy in common, as recognized in the common law, and as distinguished from the doctrine of conjoint legacy, recognized in the civil law of Louisiana. And I refer to

Justice Bradley's discussion of the opinions of the French commentators on the subject, and to his extensive quotations from the opinion which this court had given in Lebeau v. Trudeau. And I refer to the 8 other men who then made up the Supreme Court of the United States, and who concurred with Justice Bradley in his interpretation of article 1707 of the Civil Code, namely, Chief Justice Waite and Justices Clifford, Swayne, Miller, Davis, Field, Strong and Hunt.

I refer also to Justices Poche, Todd, Levy and Fenner, who (with Chief Justice Bermudez not taking part) decided in the Succession of Dupuy, 33 La.Ann. 277, in 1881, that, in a residuary legacy in favor of five legatees, the declaration that the legacy was bequeathed to them "by equal portions" was not an assignment of the part given to each one of the five colegatees.

I refer also to the three judges of the United States Circuit Court of Appeals for the Fifth Circuit, who enjoyed excellent reputations in Louisiana for their ability as jurists, namely, Judge Don A. Pardee, Judge A. P. McCormick and Judge David D. Shelby, who constituted the court that decided the case of Waterman v. Canal-Louisiana Bank & Trust Co., 186 F. 71, in 1911.

I refer also to Justice Monroe, afterwards Chief Justice, and Justices W. B. Sommerville and Alfred D. Land, who de-

cided the case of Succession of Villa, 132 La. 714, 61 So. 765, in 1913.

I refer to the late Justices Overton, St. Paul and Thompson, who decided, in the Succession of Schonekas, 155 La. 401, 99 So. 345, 346, in 1924, that the phrase "share and share alike" was an assignment of the fractional part of the legacy bequeathed to each colegatee; but I refer particularly to the fact that, four years later, in the Succession of Wilcox, and again, five years later, in the Succession of Maus, Justices St. Paul and Thompson acknowledged that they had erred in subscribing to the decision in the Succession of Schonekas, and they then held that a residuary legacy bequeathed to two or more colegatees by one and the same testamentary disposition was a conjoint legacy, in spite of the phrase "share and share alike". And I refer more particularly to the fact that the late Justice Overton in the Succession of Maus, in 1933, delivered a concurring opinion maintaining that a *residuary* legacy bequeathed to two or more legatees by one and the same testamentary disposition was a conjoint legacy, in spite of the phrase "share and share alike."

I refer to the fact that, notwithstanding Justices Overton, Rogers and Land favored granting a rehearing in the case of the Succession of Wilcox, they indicated, five years afterwards, that if the rehearing had been granted they would have voted to reinstate the original judgment of this court rendered in the case; because, in the Suc-

cession of Maus, in 1933, these three justices concurred with Justices St. Paul, Brunot and Odom in the unanimous opinion that the residuary legacy bequeathed by William P. Maus to his mother and four sisters by one and the same testamentary disposition was a conjoint legacy, in spite of the phrase "share and share alike."

And I refer now to the fact that a majority of the members of this court, as presently constituted, namely, the Chief Justice and Justices Rogers, Fournet and Ponder, concurred with Justices Land, Odom and Higgins, in the unanimous opinion written by Justice Odom in the Succession of Blossom, 194 La. 635, 194 So. 572, 573, in 1940, affirming, in express terms, the decision rendered in the Succession of Wilcox and repeated in the Succession of Maus, that a residuary legacy bequeathed to two or more colegatees by one and the same testamentary disposition was a conjoint legacy notwithstanding the phrase "share and share alike.".

In order to avoid any and all doubt that the decision rendered in the Succession of Blossom, declaring that the residuary legacy bequeathed to two legatees was a conjoint legacy, was not obiter dictum, but was an issue which the court was obliged to decide, I restate now the three alternative issues that were presented for decision in that case. The testatrix, Mrs. Emma Blossom Baker, left a will, reading as follows:

"New Orleans, La. Feb. 18—1930. I give and bequeath to Annie Baker, my adopted daughter, now at Elwyn, Pa., the usufruct of my property—and at her death *I wish this property to be equally divided* between Evelyn B. Kern of Toledo Ohio— and George D. Marshall of Shreveport, Louisiana. This is wholly written and signed and dated by me." [The italics are mine.]

George D. Marshall died before the death of the testatrix. Evelyn B. Kern, the other legatee, survived the testatrix. The will was probated on her application; and the Hibernia National Bank in New Orleans was appointed dative testamentary executor. The adopted daughter, Annie Baker, brought suit against Evelyn B. Kern, the surviving legatee, and against the Hibernia National Bank as executor. The adopted daughter, suing as the heir of the testatrix, claimed, first, that the will contained a prohibited substitution and was therefore null, and that she, the adopted daughter, as heir of the testatrix, inherited the whole estate; second, in the alternative, that she was a forced heir, and if the will should be declared valid, the legacy to Evelyn B. Kern and George D. Marshall exceeded the disposable portion and should be reduced to two-thirds of the estate; and, third, again in the alternative, that "she [the adopted daughter] was entitled to that portion of the estate which was bequeathed to George D. Marshall, who died prior to the date of the death

of the deceased [testatrix]." The court decided the three alternative demands in their order, holding, first, that the will did not contain a prohibited substitution and was therefore a valid will; second, that the plaintiff, Annie Baker, being the legally adopted daughter, was a forced heir and as such was entitled to one-third of the estate; and, third, that the plaintiff's third alternative demand, that as the heir of the testatrix she was entitled to the half of the estate which was bequeathed to George D. Marshall, was not well founded, because the legacy bequeathed to him and Evelyn B. Kern was a conjoint legacy. Having decided that the will was valid but that the adopted daughter was entitled to a third of the estate as the forced heir of the testatrix, it was necessary for the court to decide also her alternative demand, that she was entitled to one-half of the estate on the theory that the legacy in favor of Evelyn B. Kern and George D. Marshall was not a conjoint legacy. The facts and issues are well stated in the report of the case. I have examined also, however, the original record of the case in the archives of this court and I find that the attorney for the adopted daughter, in his printed brief, made an extensive argument quoting from the decision in the Succession of Schonekas, 155 La. 401, 99 So. 345, that the legacy bequeathed to Evelyn B. Kern and George D. Marshall was not a conjoint legacy. I find also that the attorney for the two defendants, Evelyn B. Kern and the Hibernia National Bank, as executor, rested his argument entirely upon the two cases which he cited in his brief, namely, Succession of Wilcox, 165 La. 803, 116 So. 192, and Succession of Maus, 177 La. 822, 149 So. 466. In disposing of that issue in the case, Justice Odom, for the court, stated simply this:

"Under the ruling in Succession of Wilcox, 165 La. 803, 116 So. 192, and Succession of Maus, 177 La. 822, 149 So. 466, Evelyn B. Kern and George D. Marshall were conjoint legatees, and, as George D. Marshall died prior to the date of the death of the testatrix, the bequest to him lapsed, under article 1697 of the Civil Code, and goes to Miss Kern, the other legatee."

It would be difficult if not impossible to find a case to which the fundamental rule of statutory construction to which I have referred would be more plainly applicable than it is to this case, where the article of the Civil Code, as first enacted in the Code of 1808, was given a definite interpretation by this court, and was re-enacted in 1825, without any change whatsoever, and was again given the same interpretation by this court, in Lebeau v. Trudeau in 1855, and was re-enacted again without any change in 1870, and again was given the same interpretation by this court, and by the Supreme Court of the United States in a Louisiana case, and by the United States Circuit Court of Appeals for the Fifth Circuit in another Louisiana case, and again and again has been given the same interpretation by this court, down to

and including the year 1940—when it was so interpreted again unanimously and by four members of this court even as now constituted—in the Succession of Blossom, 194 La. 635, 194 So. 572.

This fundamental rule of statutory construction which I have referred to shows how wrong it is for the highest court of a state to overrule a long and consistent line of its own decisions on a point of law after they have become recognized as a part of the law of the state. The doctrine jurisprudence constante, in Louisiana, is much more of a preventive of injustice than the doctrine stare decisis is in the other states. If the prevailing opinion in this case is right, imagine how many times the lawyers of Louisiana must have given the wrong advice to their clients during the past 18 years, on their faith in the decision in the Succession of Wilcox and in the Succession of Maus and the Succession of Blossom, as to the meaning of article 1707 of the Civil Code. Imagine how consistently the teachers in the law schools in Louisiana must have given the wrong instructions to the students, on the effect of adding to a residuary bequest made to two or more legatees in one and the same testamentary disposition the apparently harmless phrase, "share and share alike," or "to be divided equally between them," or "among them."

If the decision in the present case is right, imagine how many times the heirs at law of a testator must have been deprived of their inheritance unjustly by reason of their having faith—or their lawyers' having faith—in the decision rendered by this court in the Succession of Blossom, in 1940, and in the decision rendered in the Succession of Maus, in 1933, and in the decision rendered in the Succession of Wilcox, in 1928, and in the long line of decisions, going back to Lebeau v. Trudeau, in 1855, and Parkinson v. McDonough, in 1826.

The best precedent for a decision of this case is the decision in Lebeau v. Trudeau, 10 La.Ann. 164, rendered 91 years ago. That is the case in which the prevailing opinion was written by Chief Justice Slidell and was concurred in by Justices Ogden and Spofford, and in which a dissenting opinion, in line with the prevailing opinion in the present case, was written by Justice Buchanan and was concurred in by Justice Voorhies. The doctrine of the decision rendered in that case is stated completely in the syllabus, thus:

"The will of George Lebeau contained the following clause:

" 'I, the undersigned, George Lebeau, in the enjoyment of my intellectual faculties, wishing to put my affairs in proper order, and to make my last will, and to make known the persons to whom I bequeath my property:

" 'After my debts [are] paid, my property shall be divided in equal proportions, among the [8] persons hereinafter named,

that is to say, L. L., P. B., J. D., E. B., J. B., E. W., L. G., L. H. T.

" 'I have hereinbefore mentioned the names of the [8] persons to whom I bequeath all my property, these are my last testamentary dispositions. I will that they shall be respected.'

"Held: The legacy is made without the testator's having assigned the part of each co-legatee. 'The assignment of the parts of each co-legatee,' (C.C. 1700,) contemplates an express specification and assignment of the respective portions of the legatees, calling each to his particular portion. There is not that specific and distinct assignment of the parts necessary to constitute a distinct legacy to each, of distinct portions of the estate. The testator has called the legatees conjointly to partake equally in the totality of the estate, and mentioned the equality of their portions, for the purpose of regulating the distribution of the totality. The right of accretion takes place, under these clauses."

In that case the court did not overlook the fact that neither article 1699 nor article 1702 of the Code of 1825 had a counterpart in the Code Napoleon. That fact was brought to the attention of the court by Justice Buchanan's dissenting opinion just as forcibly as it is brought to the attention of the court in the prevailing opinion in the present case. On that subject Justice Buchanan in his dissenting opinion stated:

"It should be observed also, in reference to the construction of the Articles 1700 and

1701 [now 1707 and 1708], that our Code contains two articles, which are not found in the Code Napoleon, and which immediately precede and follow those two articles.

"Article 1699 declares, that the right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided in the two following articles:

"Article 1702 says:

" 'Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the heirs at law.' "

"Had these articles existed in the Code Napoleon, we are not permitted to suppose that Marcade would have maintained, as we find him doing, in opposition to Duranton and others, that the right of accretion of legacies was not limited to the cases mentioned in Articles 1044 and 1045 of the French Code.

"I think the judgment appealed from should be reversed."

What the prevailing opinion in the present case does, therefore, is to substitute for the prevailing opinion which was rendered in Lebeau v. Trudeau, 91 years ago, the dissenting opinion which was considered thoroughly and rejected finally on that occasion, and which has never been referred to with approval since it was re-

jected by the majority of the members of this court. The prevailing opinion rendered in Lebeau v. Trudeau has never been overruled or referred to with disapproval during the 91 years of its existence as a part of the law of Louisiana on this subject.

In the Succession of Burnside, 35 La. Ann. 708, in 1883, it was observed that a universal legatee, a residuary legatee, and an instituted heir, were all legatees of the same general class, as distinguished from legatees under a universal title and legatees under a particular title; and it was held in that case that a universal legatee, or so-called residuary legatee, was entitled to all of the property owned by the testator at the time of his death, including property acquired after the date of the will as well as that owned by the testator at the time when he made the will. And it was held in that case that, where there was only one universal legatee or residuary legatee, he was entitled to the benefit of all lapsed legacies, to the prejudice of the heirs of the testator, other than forced heirs; and it was held that this right of the universal or residuary legatee to have the benefit of all lapsed legacies was not dependent upon the law of accretion, but was founded upon article 1709 of the Civil Code, declaring:

"Except in the cases prescribed in the two preceding articles [allowing accretion in the two specified instances of conjoint legacies], every portion of the succession remaining indisposed of, either because the testator has not bequeathed it either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs."

It is plain, therefore, that, if we hold that the phrase "share and share alike," or any such expression of mere equality between or among two or more residuary colegatees, is an assignment of the fractional part of the legacy bequeathed to each colegatee, under the provisions of article 1707 of the Civil Code, a so-called residuary legacy in favor of two or more colegatees would not be a universal or residuary legacy at all, but would constitute two or more legacies under a universal title, according to the number of colegatees named in the testamentary disposition.

The fault in the argument for the prevailing opinion in this case is in the court's taking for its premise one of the two alternative conclusions which the court is seeking to arrive at as the correct conclusion. It consists of placing the cart before the horse—so to speak. The article of the Code provides that a legacy bequeathed to two or more legatees by one and the same testamentary disposition shall be considered as being made conjointly, so as to allow accretion, when it is made without the testator's assigning to each colegatee his part in the thing bequeathed. In this case the thing bequeathed to the two residuary legatees was the whole residue of the testator's estate, and it was made by one and the

same testamentary disposition in favor of the two legatees. The only question, therefore, which the court is called upon to decide is whether the phrase "share and share alike" constitutes an assignment of the part bequeathed to each colegatee in the thing bequeathed—i. e., in the whole residue of the testator's estate. In the prevailing opinion the court has assumed that the phrase "share and share alike", in the testamentary disposition in favor of the two colegatees, is an assignment of the part bequeathed to each colegatee, so as to divide the testamentary disposition into two legacies under a universal title, each legacy being for one-half of the residue of the estate. Having assumed that to be true, there is no escape from the conclusion that the supposed universal or residuary legacy made in favor of the two colegatees was in fact and in law not a universal or residuary legacy to the two colegatees, but consisted of two distinct legacies under a universal title, assigning to each of the two legatees the one-half part or interest in the thing bequeathed. If that is sound reasoning, article 1707 of the Civil Code, which was article 1700 of the Code of 1825, and was article 195 of the Code of 1808, could never have been applied to a residuary or universal legacy, because, when the testator, in a testamentary disposition made in favor of two or more legatees by one and the same testamentary disposition, assigns to each colegatee his undivided or fractional interest in the thing bequeathed, the testamentary disposition is not in truth a residuary or universal legacy, but constitutes two or more legacies, each under a universal title. All of this is explained well in the Succession of Burnside, 35 La.Ann. 708, in the opinion written by Justice Manning for the court, as well as in the concurring opinion by Justice Fenner.

The argument of the plaintiffs, appellants, in this case, of course, is that, as there were two universal or residuary legatees named in the will, each one of them was a universal or residuary legatee for only one-half of the residue of the estate—whereas in the Succession of Burnside only one universal or residuary legatee was named in the will. That is another example of arguing in a circle—or begging the question. The only question which the court has to decide in this case is whether the phrase "share and share alike" has the effect of dividing the one universal or residuary legacy into two legacies under universal titles, each legacy being for one-half of the residue of the estate. That question was disposed of—as definitely as any question of law could be disposed of by any court of justice—in the Succession of Wilcox and in the Succession of Maus and in the Succession of Blossom. In fact, as Justice Manning pointed out in the Succession of Burnside, 35 La.Ann. page 720, "the whole subject was reviewed and reconsidered with the same result in Lebeau v. Trudeau, 10 [La.] Ann. 164." Article 1709 of the Civil Code therefore merely confirms the right of the only surviving universal or residuary legatee to receive

the lapsed legacy against the claim of the collateral heirs of the testator.

I respectfully submit, however, that there is no good reason why we should reconsider again the question which is presented in this case, as to whether the legacy in contest is or is not a conjoint legacy, under the definition given in article 1707 of the Civil Code—and which question was put to rest in the long line of decisions commencing with the case of Lebeau v. Trudeau, 91 years ago. It is too late now to reconsider the application for a rehearing which was well considered and finally rejected in the Succession of Wilcox, 18 years ago—or the one which also was well considered and finally rejected in the Succession of Maus, 13 years ago—or the one which likewise was well considered and finally rejected in the Succession of Blossom, only 6 years ago.

The decision in this case is conceded to be a reversal of the court's long-established interpretation of article 1707 of the Civil Code on the subject of conjoint legacies. But the court overlooks the fact that the Legislature itself, has ratified and confirmed *expressly, twice,* the court's interpretation, as the true and intended meaning of this article of the Civil Code—first, by re-enacting, without any change, article 195 of the Code of 1808, as article 1700 of the Code of 1825, and afterwards by re-enacting the article, without any change, as article 1707 of the Revised Civil Code of 1870. This decision, therefore, will be re-garded, not only as a reversal of the meaning which the court and the Legislature both have given expressly and consistently to this article of the Civil Code, but also as an abolishment of the rule of statutory construction, which I have referred to, which is observed universally by the text writers on the subject, and which has been obeyed consistently heretofore by this court in its many decisions on the subject.

O'NIELL, Chief Justice (third dissenting opinion).

Since I have filed my second dissenting opinion in this case the attorneys for the appellants have filed a brief in opposition to the application of the appellee for a rehearing. In this brief the attorneys express their assurance that the chief justice —referring to me—recognizes the right of the Supreme Court to correct its errors by overruling its decisions. In support of that assurance the attorneys cite the case of Succession of Ledbetter, 147 La. 771, 85 So. 908, in which the court by a unanimous decision overruled the decision rendered in Rice v. Key, 138 La. 483, 70 So. 483, and repeated in Succession of McDuffie, 139 La. 910, 72 So. 450. In the Succession of Ledbetter I wrote the opinion for the court. I had written a dissenting opinion in both Rice v. Key and Succession of McDuffie, in both of which cases the court held that the giving of a legacy to one legatee and at the same time giving, at his death, the same legacy to another legatee, was the

same as giving the usufruct of the property to the first legatee and the property itself to the other legatee. That ruling, of course, was in direct conflict with article 1522 of the Civil Code. For that reason, not only did all of the members of the court concur in the overruling of the two previous decisions, but there was not even an application for a rehearing in the Succession of Ledbetter. Besides, the two decisions which were overruled by the decision in the Ledbetter case were not of long standing, like the long line of decisions which are being overruled in the present case. And so the decision in the Ledbetter case was not, as is the decision in the present case, a violation of the 28th Proverb, Chapter XXII—"Remove not the ancient landmark, which thy fathers have set."

I have referred already to the fact that the Legislature has held 9 (now 10) regular sessions and 15 extraordinary sessions during the 18 years since the decision was rendered in the Succession of Wilcox, and has held six (now seven) regular sessions and ten extraordinary sessions since the decision was rendered in the Succession of Maus. It is a matter of common knowledge that every session of the Legislature, in every State, is composed largely of members of the profession of law. We may take cognizance therefore of the fact that the many sessions of the Legislature of Louisiana that were held during the period, of say 8 years, commencing with the date

of the decision in the Succession of Wilcox and extending 3 years beyond the date of the decision in the Succession of Maus, were composed largely of lawyers. Two of them in fact are now members of the group of five justices who have subscribed to the prevailing opinion in the present case; one of them being the author of the prevailing opinion in this case; the other being the senior member of the group of 5 justices who have subscribed to the prevailing opinion in this case. They were both nominated in the Democratic Primary Election in January or February 1928—and were thereby virtually elected—as members of the Legislature, and they took their seats in the Legislature at the opening session on the second Monday in May 1928. Both of them thenceforth served in every session of the Legislature up to and including the 4th Extra Session of 1935, which was two years beyond the time when the decision in the Succession of Maus was rendered. The decision in the Succession of Wilcox was rendered on February 13, 1928; the petition for a rehearing was denied on March 12, 1928; and on that day the justice who had written the opinion in the Succession of Schonekas handed down his dissenting opinion in the Succession of Wilcox. See 165 La. 803, 116 So. 192. The decision in the Succession of Maus was rendered on May 29, 1933; and the petition for a rehearing was denied on July 17, 1933. See 177 La. 822, 149 So. 466.

When we consider now how vigorously the justice who had written the opinion

in the Succession of Schonekas dissented from the prevailing opinion in the Succession of Wilcox—and consider how he and two other members of the court dissented from the court's refusal to grant a rehearing in that case—and then consider how all of that dissension gave way to harmony in the unanimous decision rendered in the Succession of Maus—we are compelled to assume that if the decision rendered in the Succession of Wilcox and repeated in the Succession of Maus had been a wrong interpretation of such an important article as article 1707 of the Civil Code the lawyers generally throughout the state would have taken notice of it, and the matter would have been brought to the attention of the Legislature in one of its many sessions held during the eight years following immediately the rendering of the decision in the Succession of Wilcox, so that the Legislature itself would have amended the law if it needed amendment, instead of leaving it to the Supreme Court to overrule its decisions on the subject after they had formed a part of the law of the state for many years. At any rate that is the presumption of law which is so well established in the rules on the subject of statutory construction.

On this subject let me cite a case in which the decision is very appropriate here, namely, State v. Cusimano, 187 La. 269, loc. cit. 277, 174 So. 352, loc. cit. 355. That decision was unanimous, and I took occasion to write a concurring opinion. In the present case the court has before it its long-established interpretation of an article of the Civil Code, namely, article 1707; whereas, in the Cusimano case the court had before it its previous and repeated interpretation of two sections of an article of the Constitution, namely, sections 4 and 6 of article IV, which are reproductions of articles 48 and 50, respectively, in the Constitution of 1898. The first of these sections forbids the Legislature to enact any local or special law on any of certain specified subjects, enumerated in that section; and the second section requires publication of the intention to enact any local or special law on any subject not so enumerated. The defendant, Cusimano, pleaded that the law under which he was being sued for a balance due on a State license which he had procured, namely, Act No. 24 of the Third Extra Session of 1935, was violative of sections 4 and 6 of article IV of the Constitution of 1921, and that the previous decisions on the subject, with reference to articles 48 and 50 of the Constitution of 1898, were obviously wrong, and should be overruled. But the court unanimously refused to overrule the former decisions. Inasmuch as the concurring opinion which I handed down in that case expresses my opinion as clearly as I could express it originally now, on this subject of statutory construction—and inasmuch as that opinion, being only a concurring opinion, might suffer the fate of the "many a gem of purest ray serene the dark

unfathom'd caves of ocean bear",—I take the liberty of repeating here the appropriate and salient parts of the opinion—thus:

"The provisions of sections 4 and 6 of article 4 of the Constitution of 1921 were in articles 48 and 50, respectively, of the Constitution of 1898. My opinion once was that the court was mistaken in its original interpretation of these articles of the Constitution of 1898, in the case of State ex rel. Fortier v. Capdevielle, Mayor, et al., 104 La. 561, 29 So. 215; but the same interpretation has been given so many times, and with such deliberation, since that case was decided, that it ought to be accepted as the correct interpretation. State ex rel. Fortier v. Capdevielle, Mayor, et al. was decided in 1901, and was followed by Mulhaupt v. City of Shreveport, 126 La. 780, 52 So. 1023, which was decided the same way, in 1910. Then came State v. Landry, 139 La. 451, 71 So. 763, to the same effect, in 1916. I handed down a dissenting opinion in that case, which was concurred in by Chief Justice Monroe, but the three other members of the court, as then constituted, adhered to the two former decisions. I wrote a dissenting opinion on the subject again in Federal Land Bank v. John D. Nix, Jr., Enterprises, 166 La. 566, 117 So. 720, in 1928; but to no avail. Hence I yielded to the majority opinion on the subject, in State ex rel. City of New Orleans et al. v. Louisiana Tax Commission, 171 La. 211, 130 So. 46, 48, in 1930, where, even yet, some doubt was expressed about the correctness of the doctrine of the earlier cases 'as an original proposition.' * * *

"Hence, if the proposition were being presented now for the first time, I would see great force in the argument that the original meaning of these provisions in the Constitution was that the Legislature was forbidden to enact any local or special law on any of the subjects enumerated in what is now section 4 of article 4; and that, on any subject not enumerated in what is now section 4 of article 4, the Legislature might pass a local or special law, but only on compliance with what is now section 6 of that article of the Constitution. * * * However, I assume that the delegates in the Constitutional Convention of 1913 were aware of the interpretation which this court had given to articles 48 and 50 of the Constitution of 1898, in State ex rel. Fortier v. Capdevielle, Mayor, in 1901, and in Mulhaupt v. City of Shreveport, in 1910; and I assume that the delegates in the Convention of 1921 knew also of the decision that was rendered in State v. Landry, in 1916. Hence the two Constitutional Conventions must have approved of the court's interpretation of articles 48 and 50 of the Constitution of 1898, because these provisions were retained, without any change in that respect. Besides, it is not impossible for something that is originally wrong to become right by usage. For example, a manufacturer of timepieces would

be an iconoclast if he should turn out a watch or a clock now with the hour IV appearing as it should have appeared on the dial of the first timepiece that was ever made; and yet it would be unpardonable to write the numeral IIII anywhere else but on the dial of a timepiece. Imagine, for example, article IIII, instead of article IV, of the Constitution. The error on the face of the timepiece is accepted as being right because it is something venerable. And so it should be with regard to a judicial pronouncement of many years standing, if it be harmless—even in a civil-law jurisdiction—where stare decisis is not overworked."

The first case in which this court held that an expression such as "share and share alike," in a testamentary disposition in favor of two or more legatees, was not an assignment of the fractional part of the legacy bequeathed to each co-legatee, in the meaning of article 1707 of the Civil Code, was the case of Parkinson v. McDonough, 4 Mart., N.S., 246, decided in 1826. The legacy in that case was of one-eighth of the testator's estate, in favor of four legatees, and the expression in the testamentary disposition was "to be equally divided among them." The court held that that legacy was a conjoint legacy, under article 195 of the Code of 1808 (which is now article 1707 of the Revised Civil Code), notwithstanding the expression "to be equally divided among them." And, afterwards, in the opinion rendered in the

Succession of Wilcox, 165 La. 803, 116 So. 195, 194, in 1928, it was declared emphatically that there was no difference in the meaning between the phrases "to be equally divided among them" and "share and share alike." That declaration—that there was no difference in the meaning between the phrase "to be equally divided among them" and the phrase "share and share alike"— was affirmed—or repeated substantially—in the Succession of Maus, 177 La. 822, 149 So. 466, in the opinion written by the late Justice Land in 1933, and again the declaration was repeated substantially in the opinion written by Justice Odom in the Succession of Blossom, 194 La. 635, 194 So. 572, in 1940.

But the most striking and important case in which it was held that an expression having the same meaning as "share and share alike," in a testamentary disposition in favor of more than one legatee, was not an assignment of the fractional part bequeathed to each legatee, was the case of Lebeau v. Trudeau, 10 La.Ann. 164, decided in 1855, under article 1700 of the Code of 1825 (now article 1707 of the Revised Civil Code). In that case the legacy was a residuary legacy in favor of eight (8) legatees, and the expression was "shall be divided in equal proportions among the [8] persons hereinafter named," et cetera.

The next case was Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986; in which case the expression in a residuary legacy to two

legatees was "to be divided equally between them."

The next case in which a similar decision was rendered was the Succession of Dupuy, 33 La.Ann. 277, decided in 1881; in which case the residuary legacy to 5 legatees was coupled with the phrase "by equal portions."

There is no need for me to repeat here the purport of all of these earlier decisions. In each one of them the court dealt with a phrase similar to "share and share alike." It was in the Succession of Wilcox, 165 La. 803, 116 So. 192, in 1928, as I have said, that the court for the first time stated that there was no difference in the meaning of the phrase "to be equally divided among them," as used in the case of Parkinson v. McDonough in 1826, and the phrase "share and share alike" appearing in the will in the Succession of Wilcox.

But, as I have observed, the opinion written by me in the Succession of Wilcox in 1928 is not the only opinion in which this court has declared that there is no difference between such an expression as "to be equally divided among them," appearing in the ancient landmark entitled Parkinson v. McDonough, and the expression "share and share alike", appearing in the will in the Succession of Wilcox. For, in the Succession of Maus, written by the late Justice Land, and concurred in by all of the members of the court, as then constituted, including the three justices who

alone had rendered—and had afterwards withdrawn—the decision in the Succession of Schonekas, the court repeated that there was no difference between the phrase "to be equally divided between them" and the phrase "share and share alike [177 La. 822, 149 So. 467]." Here is what was said in the unanimous opinion rendered in the Succession of Maus, in 1933:

"The words 'share and share alike' and 'to be equally divided between them,' when added to a legacy, *are terms of similar import,* and only express what the law would imply without them. They do not alter the character of the legacy. Succession of Wilcox, 165 La. 803, 116 So. 192; Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986." [The italics are mine.]

And, again, as I have said, in the Succession of Blossom, 194 La. 635, 194 So. 572, 573, as late as 1940, in the unanimous opinion written by Justice Odom and concurred in by the chief justice and by the late Justices Land, Rogers and Higgins, and by Justices Fournet and Ponder, a residuary legacy bequeathed to two named legatees, in these words, "I wish this property to be equally divided between" the two named legatees, was declared to be a conjoint legacy, the same as if the testatrix had said "share and share alike", as in the Succession of Wilcox and in the Succession of Maus; which two cases alone were cited by Justice Odom as authority for his pronouncement.

Even in the prevailing opinion in the present case it is said (on the 18th page [28 So.2d 8]): "In the popular and ordinary sense the phrase 'share· and share alike' means in equal shares or proportions." The phrase "in equal shares or proportions," of course, has the same meaning as the phrase "to be equally divided among them," which was construed in Parkinson v. McDonough in 1826; which in turn has the same meaning as the phrase "shall be divided in equal proportions," which was construed in Lebeau.v. Trudeau in 1855; which in turn has the same meaning as "to be divided equally between them," which was construed in Mackie v. Story; which phrase has the same meaning as "by equal portions", which was construed in the Succession of Dupuy in 1881.

What I am trying to explain is that, when the court, as in the present case, expressly overrules the decision which was rendered in the Succession of Wilcox and in the Succession of Maus, the court, by necessary implication, is overruling also all of the decisions in which the court has construed the several phrases having the same meaning as "share and share alike"—commencing with Parkinson v. McDonough in 1826 and including the Succession of Blossom in 1940.

If the petition for a rehearing in this case should ·be denied our jurisprudence will have suffered the worst upset that it has ever suffered in the history of the state. For there was never a case presented to

this or any other court of justice in which the question of law tendered for decision was so well settled already as the question presented in this case was settled by the line of decisions which I have cited, commencing 120 years ago.